NATIONAL DISTILLING CO. v. CENTURY LIQUOR & CIGAR CO. et al.

(Circuit Court of Appeals, Sixth Circuit. May 3, 1910.)

No. 1,989.

1. TRADE-MARKS AND TRADE-NAMES (§ 10*)—MARKS SUBJECTS OF OWNERSHIP —INDIVIDUAL NAMES.

A corporation may adopt an individual surname as a trade-mark and is entitled to protection in its use, except as against persons of that name who have the right to use it in their own business.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 14; Dec. Dig. § 10.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 30*)—SEPARATION OF USE—VALIDITY.

A member of a partnership which deals in bottled whisky, and uses as a trade-mark a distinctive label containing the surname of the partners, although the firm may have the right to use such label, cannot also confer such right upon a corporation of which he is a stockholder and officer, but which has no connection with the business of the firm, as against another dealer which has used the same name as a brand and trade-mark for whisky for many years.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 33, 34; Dec. Dig. § 30.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 30*)—NAMES OF INDIVIDUALS—USE BY CORPORATION.

Stockholders and officers of a corporation who do not even own a controlling interest therein cannot confer on the corporation the right to use their surname as a trade-mark on goods it sells as against another dealer which has used the name as a trade-mark for many years.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 33, 34; Dec. Dig. § 30.*]

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

Suit in equity by the National Distilling Company against the Century Liquor & Cigar Company, Abe L. Livingston, W. Thomas Magee,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Alvin D. Martin, Gus Mueller, and Samuel G. Livingston. Decree for defendants, and complainant appeals. Reversed.

A. E. Wallace, for appellant.

H. S. Corbett, for appellees.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge. This suit was brought by appellant (in terms) as a distiller and rectifier of whisky and wholesale dealer therein, to enjoin an alleged infringement of its certain trade-mark by the appellee corporation as a vender of whisky at Memphis. The trade-mark is the name "Livingston," and was registered in the United States Patent Office February 20, 1905. The bill contains the ordinary averments respecting infringement and unfair trade competition, with a prayer for an injunction, an accounting, and damages. The appellant is a Wisconsin corporation. The appellee corporation was organized under the laws of Tennessee, and the other appellees are citizens of that state and domiciled there. The issues are made up in the usual way by answer and replication, except one defense which will be mentioned later. The case was heard on reference in the court below and resulted in certain findings of fact. Upon these findings the referee based conclusions of law against appellant, which, with the findings, were affirmed by the court. The matter is pending here on appeal.

It was found that appellant had used the name Livingston continuously since 1891 as a "brand, label and trade-mark on its packages containing rye and bourbon whisky"; but appellant does not seem to have commenced to bottle whisky and use the mark on those packages until 1896. Appellant has expended large sums of money in advertising its trade-mark and business and has established a trade in quite a number of the states. It is not necessary to set out either the findings of fact or the evidence. The issue at last is whether the appellee corporation has the right to use the name Livingston, as a conspicuous part of a trade-mark. Both companies are engaged in the sale of bottled whisky. The National Company, appellant, sells in cases or in wholesale lots, while the Century Company, one of the appellees, sells at retail upon mail orders. Both companies display the name Livingston conspicuously on labels placed on the bottles used in their trade. But there are such marked differences between these labels as to satisfy us that there is no probability of confusion or deception of customers, except through the use made of the name. Appellee company seeks under one of the defenses of its answer and by evidence to justify its use of the name by showing that the father of the two appellees named Livingston employed the word and name "Old Livingston" with his own photograph, as a trade-mark in a grocery business, which he conducted at Paducah, Ky., for a number of years and until his death. Certain of his sons thereafter succeeded to that business and began also to deal in whisky, adding to the mark of their father the word "Whisky." The father appears to have died in 1898. Abe L. Livingston, one of the sons, is interested in this grocery and whisky business at Paducah as a member of a firm, comprising two of his

brothers and himself. .That firm has used the mark in its whisky trade ever since the change mentioned, and is still so using it. Abe L. Livingston is president of the Century Company, and is interested in it to the extent of one share of its stock of the par value of $100; but he is the only Livingston who is interested in both the Century Company and the Livingston firm. Samuel G. Livingston, another brother and appellee, never had any pecuniary interest in the Livingston firm, but he is the secretary, treasurer, and manager of the Century Company, and the owner of 33 shares of its capital stock. The authorized capital stock of the company is $8,000; the portion paid in is $7,000.

The Century Company began the use of the label before mentioned in 1905. Abe L. Livingston, in answer to a question by what authority the Century Company "labeled the whiskies then offered for sale as Old Livingston whisky," testified: "By my authority. We were using this brand at Paducah and I gave them permission to use it at Memphis." Testimony was offered without contradiction that two concerns dealing in whisky at Memphis objected to dealing in appellant's whisky because the Century Company was advertising its mail order business and selling a "brand of Livingston" whisky through the South; one of the complaints being that the customer had been under the impression "that he was the one man handling it in Memphis at that time" and, further, that the action of the Century Company "interfered in his business, and he did not care to handle goods and go to the expense of advertising the same under a brand which his competitor handled." The other concern, according to the witness, objected to "pushing any brand any other jobber had in town, and when they spent their money to advertise a piece of goods, and got it introduced to the jobbing trade, they did not want anybody to come and cut prices on them." The National Company and the Century Company were not direct competitors in the trade because the one was selling at wholesale and the other at retail, but the interference came in the way indicated. The question is whether the National Company has such a right in the name Livingston as a trade-mark, as to entitle it to protection against the use made of the mark by the Century Company.

After finding as before pointed out that the National Company had used the word Livingston as a trade-mark continuously since June, 1891, and had "advertised its whisky in trade journals, signs, etc., under its trade-name Livingston," the referee further found that the company had "never discontinued the use of its trade-name nor given permission to any other firm, person or corporation to use the name Livingston." True, the evidence does not show why the National Company selected the name Livingston; but as observed by Judge Lowell in William Rogers Manuf'g Co. v. Rogers & Spurr Manuf'g Co. (C. C.) 11 Fed. 495, when speaking of the right to use a proper name as a trade-mark (498):

"Both parties have fallen into the mistake of supposing that it was important to have a Rogers and his son to authorize them to use the trade-mark Rogers & Son. The law is not so. Any one might use that trade-mark for the first time it was used, and if there was no Rogers in the same business

no Rogers could complain. Levy v. Walker, L. R. 10 Ch. D. 436; Massam v. Thurley Co., L. R. 14 Ch. D. 748."

However, it is not claimed by appellees that the National Company did not rightfully adopt Livingston as a mark to identify the origin and quality of whisky it distilled and placed on the market; nor that the use which the company has made of the surname has not operated to invest it with the attributes of a trade-mark as far as under the law that could be done. The contention is that a surname cannot be exclusively appropriated against any one bearing the same name or otherwise having a right to use it. Reliance is placed on Howe Scale Co. v. Wyckoff, Seamans, etc., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481; Herring, etc., Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616, and other kindred decisions. It must of course be conceded that the principle contended for has long been the settled law. But the essence of appellant's complaint is against the Century Company. It is true that individuals, among whom are the two Livingstons before mentioned, are also parties; but the charge made in the bill against them is that they "are directors and officers of said defendant corporation, and assist and take part in the aforesaid wrongful and unlawful acts." What right has the appellee corporation—the Century Liquor and Cigar Company—to use the name Livingston, is the inquiry; not what right the other appellees as individuals have to do so.

The precise claim made of the existence of such a right in the corporation is the authority given by Abe L. Livingston, as before pointed out. If it be assumed that the present Livingston firm is entitled to protection in the use of that trade-mark, it is because of the right of the members to use their own name in the conduct of their own business. But how could the mark be rightfully employed even with the sanction of the firm to distinguish its product or selection of whisky and also that of the Century Company? Plainly both of these things are not necessary to enable the firm to make fair and reasonable use of the name as a trade-mark; and to accord the firm such double privilege would at once allow it to impose a double burden on appellant and practice an obvious deception upon the public. There is nothing to show that this firm and the Century Company handle the same kind or quality of whisky; nor that the firm, as such, has given any sanction at all to the use of its mark by the Century Company; much less that it has sold its whisky business and good will to the Century Company. In alluding to the devices used as trade-marks by the Livingston firm and the Century Company, it is not meant to state that the name of the Century Company and its place of business are not shown on its label. But it is intended to point out the fact that the distinctive and most prominent features of the marks—Old Livingston and the photograph of the deceased Livingston—are displayed alike on both. Now it may well be that the appellant cannot be heard in defense of that firm's rights. But the relief sought by the appellant clearly extends to all interferences with its trade-mark, which are not traceable to persons having a right in common with ap-

183 F.—14

pellant to the use of the name Livingston. And all consumers who may be influenced to purchase the article designed to be identified by the trade-mark of M. Livingston & Co., are entitled as members of the public to protection against the use of that mark to represent another and different dealer and article.

There are, however, the two Livingstons, who are connected with the Century Company. But these men are engaged in the business of that company in representative capacities as officers, not as individuals engaged in their own business. They act in the name of the company, not in their own names. True, these men are stockholders as well as officers and directors of the company; but they do not constitute a majority of the directors, nor do they own a majority of the stock paid in. They cannot therefore offer even the excuse of corporate control, if indeed that would shield them. The distinction between the rights of the Century Company and those of the two Livingstons, is substantial and cannot be ignored. In Hall's Safe Co. v. Herring-Hall-Marvin Co., 146 Fed. 37, 76 C. C. A. 495, 14 L. R. A. (N. S.) 1182, when it was sought to ignore the existence of the corporation and reach and control its officers and agents because of a sale the old company had made through them to the complaining party, Judge Severens said (41):

"If the purchaser desired to make the officers and agents of the selling corporation subject to the stipulations of the company in the contract of sale, it should have required their personal agreement to that effect. * * * This rule is not affected by the circumstance that they are indirectly interested as stockholders in the contracts of their corporation. If it were so, it would break down all distinction between the corporate entity and its component parts."

True, in that case it was sought to prevent certain of the officers and stockholders of the selling company from using the name of their ancestor as part of the name of the new company, which they had formed for the purpose of doing the same kind of business as that previously carried on by the selling company and whose assets and business they had sold. But since the Halls did not in that sort of a transaction exercise their individual rights so as to lose the privilege of using their own name subsequently in the formation of a company and so engage in the same character of business, it ought in principle to follow that the two Livingstons in the present instance are not exercising their individual rights to use their name when as officers and stockholders they act for the Century Company. See, also, Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 273, 28 Sup. Ct. 288, 52 L. Ed. 481. It is simply misapplying the rule that one cannot be prevented from using his own name in his own business, to say under the facts of this case that these men can use their name as a trade-mark in the business of this corporation. The cases relied on by appellees upon this subject do not secure more than a personal privilege, and that only when it is exercised fairly and so as not to mislead the public. Royal Baking Powder Co. v. Royal, 122 Fed. 337, 348, 58 C. C. A. 499. In Herring, etc., Safe Co. v. Hall Safe Co., supra, Mr. Justice Holmes said (208 U. S. 559, 28 Sup. Ct. 352 [52 L. Ed. 616]):

"The name of a person or a town may have become so associated with a particular product that the mere attaching of that name to a similar product without more would have all the effect of a falsehood. Walter Baker & Co. v. Slack, 130 Fed. 514 [65 C. C. A. 138]. An absolute prohibition against using the name would carry trade-marks too far. Therefore the rights of the two parties have been reconciled by allowing the use, provided that an explanation is attached. * * * Of course the explanation must accompany the use, so as to give the antidote with the bane."

When the appellant adopted the name Livingston as its trade-mark, it did so subject to the rule thus reannounced with such clearness; but it did not do more. It appropriated the name as a trade-mark in the business of distilling and selling whisky long before any one else attempted to do so. Hence, in the effort now made to sustain a division of the use of the mark between appellant and the Century Company through the right of the firm of M. Livingston & Co., the only rule is overlooked that might be available to the firm itself to justify its own use of the mark. Royal Baking Powder Co. v. Royal, supra; Herring, etc., Safe Co. v. Hall's Safe Co., supra. More than this— in view of the practical transfer involved in the use actually made of the mark, the effort, if successful, would work a violation of the rule forbidding transfer of a trade-mark except as an incident to the sale of a business and good will or of a place where a business is at the time carried on. Dietz v. Horton Mfg. Co., 170 Fed. 865, 871, 96 C. C. A. 41, and decisions there cited.

The order will be that the decree below be reversed, and the cause remanded with direction to enter a decree in favor of appellant according to the prayer of its bill with costs; but since no special damages appear to have been suffered by appellant, the prayer for an accounting is denied.