DE VOE SNUFF CO. v. WOLFF.

(Circuit Court of Appeals, Sixth Circuit. June 3, 1913.)

No. 2,334.

1. TRADE-MARKS AND TRADE-NAMES (§ 28*)—INFRINGEMENT.

Complainant and its predecessors in business have for more than 70 years been continuously engaged in the manufacture of snuff, widely sold throughout many states and for some years largely advertised. During all that time its mills have been known as the "Eagle Mills" and it and its predecessors have used on their packages and stationery the picture of an eagle and the words "Eagle Mills" or "Eagle Snuff," so that its product has long been known to the trade and to users as "Eagle Snuff." *Held*, that it has a common-law trade-mark in the picture of an eagle and in the word "eagle" as applied to snuff, whether used in connection with other words or not, and that the use by defendant on its packages of snuff of the picture of an eagle and the name "White Eagle Snuff" was an infringement, although both picture and name differed materially in appearance from those used by complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 31; Dec. Dig. § 28.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 57*)—"INFRINGEMENT"—TEST OF INFRINGEMENT.

It is not necessary to constitute infringement that every element of a trade-mark be appropriated nor that it be completely copied, but a proper test is whether, taking into account the resemblances and differences, the former are so marked that the ordinary purchaser is likely to be deceived thereby.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 65; Dec. Dig. § 57.*

For other definitions, see Words and Phrases, vol. 4, pp. 3590–3594.]

3. TRADE-MARKS AND TRADE-NAMES (§ 65*)—INFRINGEMENT—EXTENT OF IMITATION.

The protection accorded to a trade-mark is not limited to such imitations as would deceive a cautious and discriminating customer, but include as well such as would be likely to deceive the ordinary or unwary purchaser.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 64; Dec. Dig. § 65.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. TRADE-MARKS AND TRADE-NAMES (§ 55*)—SUIT FOR INFRINGEMENT—INJUNCTION.**

That an infringer of a technical trade-mark did not know of its prior use by another is immaterial as respects the right of the owner to an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 63; Dec. Dig. § 55.*]

Appeal from the District Court of the United States for the Eastern District of Michigan, Alexis C. Angell, Judge.

Suit in equity by the De Voe Snuff Company against Jacob Wolff, executor of the estate of Ignatz Wolff, deceased. Decree for defendant, and complainant appeals. Reversed.

F. F. Reed and E. S. Rogers, both of Chicago, Ill. (A. H. Burroughs, of New York City, of counsel), for appellant.

August Cyrowski, of Detroit, Mich., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Complainant filed its bill to restrain infringement of an alleged common-law trade-mark, consisting of the word "Eagle" and the picture of an eagle as applied to snuff of its manufacture. There is no charge of unfair competition. On final hearing on pleadings and proofs the District Court dismissed the bill. From that dismissal this appeal is taken. Defendant appeared below, filed an answer, and (except as presently stated) was represented by counsel throughout, including final hearing. He, however, took no testimony, and was not represented at the taking of complainant's testimony. Nor was he represented on the argument in this court, by brief or otherwise.

[1] The testimony satisfactorily shows that the manufacture and sale of snuff was established at Spottswood, N. J., in 1835, by complainant's predecessors in ownership by direct and continuous line of succession; that such manufacture and sale has ever since been carried on by complainant's predecessors and by complainant; that from the beginning the manufacturing plant of complainant and its predecessors has been known in the trade and among the general public as "Eagle Mills"; that likewise from the beginning the product of complainant and its predecessors at Spottswood, N. J., and elsewhere, has been known to, ordered by, and spoken of generally in the trade as "Eagle Snuff" or "Eagle Mills Snuff" and sometimes as "De Voe's Eagle Snuff;" that the labels and packages of complainant and its predecessors have generally borne thereon, as identifying and characteristic features, the picture of an eagle and the title "Eagle Mills," although complainant did not, as a rule, name or label its product "Eagle Snuff," one exception, however, to this rule being shown in the case of a mark on the outside of a shipping package. Advertising was begun by complainant's predecessors "in the fifties," and has ever since been carried on by their successors in interest and ownership, including complainant. The words "Eagle Mills" were used in all this adver-

tising, which was done only through showcards or by circulars until about 1888, when general advertising was placed in the catalogues of wholesale druggists "all through the West, especially in Ohio, Illinois, Michigan, Wisconsin, Minnesota, Iowa and Missouri." Advertisements were also placed in Los Angeles, Cal., and Spokane, Wash. Complainant's snuff was exhibited at the World's Fair in 1893, and there received "the highest award." Complainant's predecessors have used the picture of an eagle on their stationery since about 1888 or 1889. Its snuff has been sold for apparently at least 40 years or more "throughout the Eastern States, New York State, Ohio, Michigan, Illinois, Indiana, Wisconsin, Minnesota, and in the South." As early as 1872 it was sold also in Pennsylvania, Missouri, and Nebraska. When the testimony was taken in 1908 complainant's sales were totaling about 300,000 pounds of snuff per year.

The deceased, Ignatz Wolff, began the manufacture of snuff in his tobacco factory, at Detroit, Mich., about the year 1886, and the business was carried on by him until his death in November, 1906. Since that time it has been carried on by the defendant executor. For several years at least before the death of Ignatz Wolff his factory was known and advertised as the "White Eagle Tobacco Factory." His letter heads contained that name, together with the picture of an eagle. His labels, so far as appears by the record, invariably contained the picture of an eagle; some of the labels containing the words "White Eagle Snuff," others the words "White Eagle" in connection with such words as "Polish Snuff" and "Holland Snuff." The defendant executor has used substantially the same names and representations upon letter heads and labels since the death of his decedent. The picture of the eagle as used by the latter and his executor differs from that used by complainant and its predecessors in this: That the picture used by complainant and its predecessors usually represented the eagle with wings outstretched, as in the act of flying or preparing to fly; while that used by Ignatz Wolff and his executor is, with one exception, a conventionalized representation, showing the eagle and the wings practically erect, and is said to be that used as the Polish National Emblem. (The eagles on the national coats of arms of Germany, Russia, and Austro-Hungary show generally similar positions of the wings.) The one exception referred to is on the label of "Polish-American Snuff," which shows the conventional American eagle as part of an elaborate coat of arms purporting to be a registered trademark; proof of such registration, however, under the federal laws not appearing. Decedent and defendant advertised this snuff in the Detroit City Directory as a product of the "White Eagle Tobacco Factory." One of decedent's advertisements used the term "White Eagle Snuff."

The district judge, in dismissing the bill, assumed, for the purposes of the case, that complainant had established a common-law trade-mark "in its representation of the eagle and the word Eagle or the words Eagle Mills in connection therewith upon packages of snuff," but was of opinion that no confusion could be caused to the dealers purchasing from manufacturers or to ultimate purchasers

using ordinary care, because of the difference in the appearance of the respective eagles and the dissimilarity of the labels, especially in that the word "Eagle" alone does not appear on complainant's label and the words "Eagle Mills" are not conspicuously placed; while on defendant's labels the words "White Eagle" form a prominent element.

We are clearly of opinion that the evidence establishes complainant's ownership of a technical trade-mark in the name "Eagle" and the picture of an eagle; and that complainant is entitled to protection in such ownership. The word and symbol in question are of a character to be appropriated. By long use they have become associated in the mind of the public with the goods of complainant and its predecessors, and so naturally indicate to the public complainant's product. As said by Judge Denison, speaking for this court, in Merriam v. Saalfield, 198 Fed. 369, 372, 117 C. C. A. 245, 248: "A trade-mark is a trade-mark because it is indicative of the origin of the goods." The word and symbol being of a character to be appropriated, and having been duly appropriated as a trade-mark, the latter became property which competitors have no right to use, either alone or in connection with other matter to which complainant lays no claim. Enoch Morgan's Sons Co. v. Ward (C. C. A. 7th Cir.) 152 Fed. 690, 692, 81 C. C. A. 616, 12 L. R. A. (N. S.) 729; American Tin Plate Co. v. Licking Roller Mill Co. (C. C.) 158 Fed. 690, 693.

[2] Is complainant's trade-mark infringed by defendant's labels and advertising matter? It is true that the dress and appearance of defendant's designs differ materially from those of complainant. But it is not necessary, to constitute infringement, that every element of a trade-mark be appropriated, nor that the trade-mark be completely copied. A proper test is whether, taking into account the resemblances and differences, the former are so marked that the ordinary purchaser is likely to be deceived thereby. Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 33, 21 Sup. Ct. 7, 45 L. Ed. 60; Johnson v. Bauer (C. C. A. 7th Cir.) 82 Fed. 662, 663, 27 C. C. A. 374; Enoch Morgan's Sons Co. v. Ward, supra, 152 Fed. at page 692, 81 C. C. A. 616, 12 L. R. A. (N. S.) 729.

[3] Complainant's snuff, as a result of its markings, having become known in the market as "Eagle Snuff," defendant's adoption of a mark causing his goods to bear the same name in the market would invade complainant's rights. Seixo v. Provezende, L. R. 1 Ch. App. 192, 197; Read v. Richardson, 45 L. T. (N. S.) 54, 58. We think such is the result of the use of defendant's labels. It is doubtless true that the dealer accustomed to handling complainant's snuff would not be deceived by defendant's labels or advertising matter. But this is not, we think, true of the ultimate purchaser. If, as we have found to be the fact, the name "Eagle Snuff" has come to be associated in the minds of the public with and to represent complainant's product, we think it clear that the ordinary purchaser accustomed to buy and use Eagle Snuff, and not seeing the respective products side by side, could readily be deceived into purchasing defendant's product as that of complainant, presenting, as the former does, the idea of "Eagle" snuff as a prominent characteristic. It may be true that the cautious

and discriminating purchaser is not likely to be so misled; but the protection accorded to a trade-mark is not limited to the cautious and discriminating customer, but embraces the "ordinary" or "unwary" purchaser as well. Ohio Baking Co. v. National Biscuit Co. (C. C. A. 6th Cir.) 127 Fed. 116, 120, 62 C. C. A. 116; Waterman Co. v. Drug Co. (C. C. A. 6th Cir.) 202 Fed. 167, 171; Florence Mfg. Co. v. Dowd (C. C. A. 2d Cir.) 178 Fed. 73, 75, 101 C. C. A. 565; Upper Assam Tea Co. v. Herbert, 7 R. P. C., 183; Seixo v. Provezende, L. R. 1 Ch. App. 192, 196. It is significant that complainant's representative, applying to Detroit dealers (where defendant's product appears not to have been sold) for White Eagle Snuff, was tendered complainant's manufacture. The differences in the posture of the eagle, as represented in the labels and advertising matter of complainant and defendant, respectively, do not impress us as controlling. The picture of the eagle is prominently upon each label, and in many cases in connection with the word "Eagle." It is reasonable to expect that the unwary purchaser accustomed to the purchase and use of complainant's "Eagle" snuff would not be deterred from accepting defendant's product because of the differences in the appearance of the eagle.

We are of opinion that complainant's trade-mark is infringed by defendant's use of the word "Eagle" and its picture of an eagle, as applied to snuff. This conclusion is, we think, amply supported by well-considered precedents. See Upper Assam Tea Co. v. Herbert, supra (the "Elephant Tea" case); Anglo-Swiss Condensed Milk Co. v. Metcalf, 3 R. P. C. 28, 31 (the "Dairy Maid Brand" condensed milk case); Ohio Baking Co. v. National Biscuit Co., supra (the "Iner-Seal" case).

[4] It is immaterial that defendant and his decedent are not shown to have known of complainant's trade-mark, and thus not shown to have intended to pirate it. This is not a case of unfair competition, but involves only a pure common-law trade-mark. In such case, defendant's good faith is immaterial, as respects the right to injunction. Saxlehner v. Siegel-Cooper Co., 179 U. S. 42, 43, 21 Sup. Ct. 16, 45 L. Ed. 77.

Complainant is entitled to an injunction restraining the use of complainant's trade-mark, substantially according to the prayer of the bill. The record is not such as to justify an imperative order for accounting. The many years' failure to prosecute suggests laches. On the face of things, it would seem that complainant must have known, or should have known, of the infringement if substantial in character; and, if unsubstantial, no accounting is needed. See National Distilling Co. v. Century Liquor, etc., Co. (C. C. A. 6th Cir.) 183 Fed. 206, 211, 105 C. C. A. 638. It does not appear when complainant first knew of decedent's infringement. The bill, however, contains an allegation which may be treated as an admission, that such knowledge was had about two years before Ignatz Wolff's death. Suit was not begun until after the latter's lips were sealed, and, as we have said, no bad faith was shown. We shall not, however, foreclose the question of accounting, but shall allow the district judge to determine that ques-

tion on further application and showing by complainant, if it shall be so advised.

The decree of the District Court is reversed, with costs, with instructions to take further proceedings consistent with this opinion.