### KNABE BROS. CO. v. AMERICAN PIANO CO.

### AMERICAN PIANO CO. v. KNABE BROS. CO.

(Circuit Court of Appeals, Sixth Circuit. February 11, 1916.)

Nos. 2673, 2674.

1. TRADE-MARKS AND TRADE-NAMES ☞79—SUITS FOR INJUNCTIONS—PREMATURE SUITS.

Where defendant, having a corporate name somewhat similar to trade-marks and trade-names acquired by plaintiff, was arranging to put out a piano bearing its corporate name upon its fall-board and with an insufficient warning notice to purchasers, plaintiff was not bound to wait until defendant's piano was actually on the market before filing a bill for an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 89, 90; Dec. Dig. ☞79.]

2. TRADE-MARKS AND TRADE-NAMES ☞85—SUITS FOR INJUNCTION—DEFENSES—MISREPRESENTATION BY PLAINTIFF.

From 1837 to 1908 William Knabe, and later his sons and a son-in-law, under the name of "Wm. Knabe & Co.," and still later a corporation organized by the sons and the children of one of them, known as the "Wm. Knabe & Co. Mfg. Co.," manufactured pianos in Baltimore known to the trade as "Knabe" pianos, or "Wm. Knabe & Co." pianos, and in 1905 these names were registered as trade-marks. In 1908 grandsons of the founder of the business, whose names were Knabe, and who were

then in control of the corporation, assisted in consolidating it with other piano companies to form the plaintiff company, and the Knabe Co. transferred to plaintiff all of its assets, including its good will, trade-marks, and trade-names. Later the grandsons severed their connection with plaintiff and organized the defendant corporation, known as the "Knabe Bros. Co.," which engaged in the manufacture of pianos in or near Cincinnati. On the fall-board appeared the corporate name, without further designation, and on the cheek-block, at the left of the bass scale, a notice was prominently displayed, stating that such company's product must not be confused with the Wm. Knabe & Co. piano of Baltimore, manufactured by plaintiff, and that its managing officers were grandsons of the original William Knabe, and former officers of Wm. Knabe & Co. *Held,* that the fact that plaintiff had continued to advertise the connection of the grandsons with the manufacture of plaintiff's pianos, after their connection with it had ceased, was not ground for denying plaintiff injunctive relief, where the offending publications were promptly discontinued when complained of, and no deception was intended.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. ☜85.]

3. TRADE-MARKS AND TRADE-NAMES ☜85—SUITS FOR INJUNCTION—DEFENSES —MISREPRESENTATION BY PLAINTIFF.

That plaintiff sold pianos other than Knabe pianos as bearing the Knabe guaranty was not ground for the denial of injunctive relief, where it was not clear that the "Knabe guaranty" was anything more than a guaranty of quality.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. ☜85.]

4. TRADE-MARKS AND TRADE-NAMES ☜85—SUITS FOR INJUNCTION—DEFENSES —MISREPRESENTATION BY PLAINTIFF.

In view of the conveyance to plaintiff of the trade-marks and good will of its predecessors, the putting out of Knabe pianos under the name of "Wm. Knabe & Co.," without disclosing that plaintiff was only the successor to Wm. Knabe & Co., did not deprive it of its right to protect the name against infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. ☜85.]

5. TRADE-MARKS AND TRADE-NAMES ☜73—RIGHT TO USE OWN NAME.

Where the sale of the Knabe Co.'s assets and good will did not, in terms, restrict the right of the grandsons to manufacture and sell pianos, plaintiff did not, under the common law or under the registration of its trade-mark, have any exclusive right to the use of the name "Knabe," and the grandsons had a perfect right to employ their name in the business of manufacturing and selling pianos, either as individuals or in the name of the corporation of which they were the actual managers and operators, provided they did not invade the good will of plaintiff's business and employ trade-marks and trade-names adopted by plaintiff.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☜73.]

6. TRADE-MARKS AND TRADE-NAMES ☜74—REFERENCE TO PREVIOUS CONNECTION WITH ANOTHER.

Defendant had the right to advertise and make the most, by legitimate means, of the former connection on the part of its managing officers, and their familiarity, with the manufacture of pianos, and even of Knabe pianos, provided they took reasonable precautions to make it clearly appear that the goods sold by it were its own goods and of its own make, and not those of plaintiff or of its predecessors.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 85; Dec. Dig. ☜74.]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.**

Defendant had no right to advertise its pianos as "Knabe's," as the unqualified use of the word would naturally suggest origin of manufacture.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

**8. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.**

The mere use, with or without the place of manufacture, of defendant's corporate name on its pianos, was not enough to distinguish them from plaintiff's pianos, even though script type, instead of old English used in plaintiff's trade-mark "Wm. Knabe & Co.," was used, as the ultimate purchaser of only ordinary information is the one to be considered, and presumably the general public is unfamiliar with the place of manufacture of the Wm. Knabe & Co. pianos or the precise form of its manufacturer's names; and hence the court was justified in requiring that there be placed on the outside of the piano a further warning notice than that given by the name and address on the fall-board.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

**9. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.**

The court erred in requiring defendant to place its corporate name and a warning notice on a metal plate on the fall-board with finely inscribed lines, instead of the plain and universally used lettering, as this would directly and unnecessarily tend to discredit the regularity of defendant's product.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

**10. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.**

Where the name "Knabe" had come to indicate both origin and quality, the court erred in requiring the warning notice to state that defendant's piano was not a "Knabe," or an "original Knabe," as defendant was thereby required to disclaim the Knabe quality, as well as an implied origin of manufacture in plaintiff or its predecessors.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

**11. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.**

Defendant was entitled to use its corporate name as manufacturer upon the fall-boards of its pianos.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

**12. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.**

Where no sufficient warning notice could be put on the fall-boards without substantially mutilating and thereby unduly discrediting defendant's pianos, it was not imperatively necessary that such notice should immediately follow the manufacturer's name, and, though such name appeared upon the fall-board, a proper notice permanently attached to the cheek-block, in black upon a white ground, in letters readily legible, would sufficiently protect plaintiff's rights in connection with a notice required to be displayed in salesrooms and inserted in advertisements.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

**13. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.**

The notice originally used by defendant was not a sufficient warning, as it did not show that the piano was not the product of the original manufacturers of Knabe pianos, and plaintiff was entitled to such a notice; and hence a notice should be required, stating that the piano was not made by Wm. Knabe & Co., of Baltimore, the original manufacturer of Knabe pianos, nor by Wm. Knabe & Co. Mfg. Co., nor by plaintiff,

successors of Wm. Knabe & Co., that the Knabe Bros. Co., maker of the piano, had no connection with those companies, and that its managing officers were grandsons of the original Knabe, and former officers of the Knabe Co.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

14. TRADE-MARKS AND TRADE-NAMES ☞73—UNFAIR COMPETITION—DISPARAGEMENT OF ANOTHER'S GOODS.

Defendant had a right to advertise and represent its pianos as the only pianos made by a Knabe, or by a living Knabe, so long as such representation was true, provided it made it clearly appear that it and its officers had no connection, by succession, inheritance, or otherwise, with the business of the original manufacturers of the Knabe piano or the successors of those original manufacturers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

15. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.

It was error to enjoin defendant from representing or advertising that its pianos were Knabe pianos, and the injunction should be so limited as to permit the assertion of a claim that its pianos had the quality of Knabe pianos, provided there was such an unmistakable disclaimer as to origin of manufacture as to preclude confusion.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

16. TRADE-MARKS AND TRADE-NAMES ☞73—USE OF SIMILAR NAMES.

Defendant in this case is required to insert conspicuously in its circulars, catalogues, and advertisements, and to frame and keep in display upon its pianos, in salesrooms in which they were offered for sale, a notice stating in brief form the history of the Knabe business, the former connection therewith of defendant's organizers, the severance of their connection therewith, the organization of defendant, the distinction in name between the two pianos, and the lack of any connection between defendant's and plaintiff's pianos.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. ☞73.]

Cross-Appeals from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by the American Piano Company against the Knabe Bros. Company. From the decree, defendant appeals, and plaintiff cross-appeals. Modified.

Kramer & Bettman, of Cincinnati, Ohio (Gilbert Bettman, and John D. Ellis, both of Cincinnati, Ohio, of counsel), for appellant and cross-appellee.

Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, and Masten & Nichols, of New York City, for appellee and cross-appellant.

Before KNAPPEN and DENISON, Circuit Judges, and CLARKE, District Judge.

KNAPPEN, Circuit Judge. The case is here on appeal and cross-appeal, respectively, from a final decree upon pleadings and proofs in a suit brought by the American Piano Company against the Knabe Bros. Company for infringement of trade-mark and for unfair competition.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

William Knabe began the manufacture of pianos at Baltimore, Md., in 1837, continuing therein until his death in 1864, doing business for the most of that period in the name of Wm. Knabe & Co. Upon his death, his sons Ernst and William II, together with his son-in-law (Keidel), succeeded to the business, carrying it on in the same firm name until 1889, when the business was incorporated as "Wm. Knabe & Co. Manufacturing Company of Baltimore City," with a capital stock of $1,000,000; Ernst Knabe being president until his death in 1894. Ernst's two sons, Ernst, Jr., and William III, entered the business when respectively 17 years of age, serving a thorough apprenticeship in the manufacture of pianos and every part thereof, and acquiring experience, skill, education, and training in such manufacture according to the Knabe standards and traditions. Upon the death of Ernst Knabe, Sr., his two sons named succeeded to his interest and became directors and officers; Keidel being manager. In 1898 Keidel sold out his interest to Ernst, Jr., and William III, who thereupon became the owners of substantially all the capital stock of the corporation and its active managers, being also president and vice president, respectively. In 1905 the Wm. Knabe & Co. Manufacturing Company registered, under the law of 1905 (Act Feb. 20, 1905, c. 592, 33 Stat. pt. 1, p. 724), three trade-marks, one upon the word "Knabe" alone, another upon that word in design, the third upon the name "Wm. Knabe & Co." in old English type. The pianos made by Wm. Knabe & Co. and the Wm. Knabe & Co. Manufacturing Company have generally been known to the trade either as "Wm. Knabe & Co." pianos or as "Knabe" pianos, usually, at least, bearing the name "Wm. Knabe & Co." on the fall-board. The Knabe piano has always been a high-class instrument.

In 1908 the American Piano Company was organized by way of consolidation of the Wm. Knabe & Co. Manufacturing Company, Chickering & Sons, and the Foster-Armstrong Company; the consolidated company acquiring all the capital stock of the Knabe Company (paying therefor in stock of the American Piano Company) and the Knabe Company conveying to the American Piano Company all its assets (with certain immaterial exceptions), expressly including good will, trade-marks, and trade-names. Ernst Knabe, Jr., and William Knabe III were active spirits in the formation of the American Piano Company, and upon its organization became actively connected with the management of its business, becoming directors and respectively president and vice president. In 1910, as a result of disagreements and litigation, the two Knabes retired from the American Piano Company, having parted with all their stock therein. In 1911, through the aid of their friends, they organized, under the laws of Ohio, a corporation known as the "Knabe Bros. Company," acquiring the capital stock, plant, and properties of the Smith & Nixon Piano Company at Norwood, Ohio (Ernst Knabe moving to Cincinnati from Baltimore), and proceeded to manufacture, not only the Smith & Nixon piano, under that name, but also the piano here in question. The latter piano, as first manufactured, bore upon its fall-board the words "Knabe

Bros. Co., Cincinnati" (without other designation), and upon the cheek-block, at the left of the bass scale, the following prominently displayed notice:

"NOTICE.

"Our product must not be confused with the Wm. Knabe & Co. piano of Baltimore, now manufactured by the American Piano Co.

"The managing officers of this Company are Ernst J. Knabe, Jr., and Wm. Knabe III, grandsons of the original Wm. Knabe and formerly officers of Wm. Knabe & Co. of Baltimore.

"This piano is absolutely guaranteed as to workmanship and material and has been inspected personally by ......" (blanks being left for signature, date and number).

Thereupon the American Piano Company filed its bill to restrain the Knabe Bros. Company from using the word "Knabe" as a part of its corporate name in manufacturing, selling, or dealing in pianos, or using upon its pianos any name or mark in which the word "Knabe" appears, or of which it forms a part, and from using that word, either alone or with other words, in circulars, catalogues, letter heads, advertisements, labels, or otherwise, in connection with the manufacture, sale, or hire of pianos; also from holding out defendant's pianos as "Knabe pianos." By cross-bill defendant sought to restrain plaintiff from certain alleged unfair misrepresentations.

A preliminary injunction was issued restraining defendant from placing upon its fall-boards the marking before referred to, and permitting only in place thereof the use of a metallic plate, which as finally approved by the court was less than three inches long and about one inch wide, bearing the following engraved inscription:

"The Knabe Bros. Company. This piano is not an original 'Knabe,' but is made under the supervision of E. J. and Wm. Knabe III, grandsons of the original Wm. Knabe I."

Plaintiff was at the same time, on defendant's application, enjoined from publishing statements that the Knabes of the present generation are still making the Wm. Knabe pianos, or are connected with that company, or that Ernst Knabe, Jr., or Wm. Knabe III have any connection with the American Piano Company. Thereafter, during the pendency of suit, defendant used upon its fall-boards only the metallic plate permitted by the court's order, discontinuing the use of the cheek-block notice. The final decree made no change respecting the markings permitted upon the fall-boards or the exterior of the pianos, except that the word "original" was to be omitted; the plate thus containing the statement "This piano is not a Knabe." Defendant was also perpetually enjoined from representing by advertisement or otherwise that its pianos are the only pianos made by a Knabe or by a living Knabe,[1] or that complainant's pianos are not Knabe pianos in fact, but only in name; also from representing by advertisement or otherwise that any part of complainant's business has been moved

---

[1] In fact the two Knabes mentioned seem to be the only living Knabes engaged in the piano business; Charles Keidel, a grandson of Wm. Knabe I, was for a time connected with the American Piano Co., but died during the pendency of this suit.

to Norwood or Cincinnati, or that defendant, or either or both of the Knabes mentioned, succeeded to the business conducted by complainant's Knabe factory; also from in any manner attempting to injure the good will and reputation of complainant or of the Wm. Knabe & Co. Manufacturing Company, as well as from doing anything which would lead the public to believe that defendant's pianos are Knabe pianos. The final injunction imposed restraint upon plaintiff substantially as did the temporary injunction.

[1] Defendant not only complains of the extent of the relief granted plaintiff, but asks that the bill be dismissed. Apart from the meritorious question whether defendant has invaded plaintiff's rights, the dismissal asked does not rest upon meritorious grounds. True, the bill was filed before defendant's pianos were actually upon the market; but defendant was arranging to put out a piano bearing its corporate name upon its fall-board and with the warning notices stated. Assuming for the present that the warning intended to be employed was insufficient, plaintiff was not bound to wait until the piano was actually on the market.

[2-4] But plaintiff is charged with coming into court with unclean hands: (1) By continuing to advertise by signs, catalogues, and otherwise the connection of Ernst, Jr., and William III with the manufacture of plaintiff's Knabe pianos after their connection with the plaintiff company had ceased; (2) by advertising "club sales" of pianos not in fact Knabe pianos as bearing the Knabe guaranty; and (3) in deceiving the public by selling pianos under the Knabe name without disclosing the plaintiff's successorship to Wm. Knabe & Co. It appears, however, that the offending publications were promptly discontinued when complained of, and we are not convinced that deception in that regard was intended. As to the second point: Plaintiff sold other pianos besides the Knabe, including some taken in exchange, and it is not clear that the "Knabe guaranty" meant in the case in question that the pianos were sold as Knabe pianos, or went beyond the guaranty of quality. Respecting the third point: In view of the conveyance to plaintiff of the name, trade-marks, and good will of its predecessors, a putting out of Knabe pianos under the name of "Wm. Knabe & Co." did not, in our opinion deprive plaintiff of the right to protect the name against infringement, Herring v. Hall, 208 U. S. 554, 557, 558, 28 Sup. Ct. 350, 52 L. Ed. 616; Chickering v. Chickering (C. C. A. 7) 215 Fed. 490, 499, 500, —— C. C. A. ——.

[5-8] Coming to the meritorious question: By the sale of the Wm. Knabe & Co. Manufacturing Company's assets and good will, the right of Ernst Knabe, Jr., and William Knabe III, to manufacture and sell pianos was in no way restricted in terms. Subject to the limitation hereafter stated, they thus had a perfect right, on severing their connection with the plaintiff company, to employ their own names in the business of manufacturing and selling pianos, either as individuals or in the name of the corporation of which they were the active managers and operators, and which in a proper sense represented their personal business. They had, however, no right to employ the trade-marks and trade-names which plaintiff had obtained

under the purchase of the Knabe Manufacturing Company's assets, or to invade the good will of that business. But by virtue neither of the common law nor of the registration under the statute of 1905 did plaintiff, as successor to Wm. Knabe & Co. or otherwise, obtain the exclusive right to the use of the name Knabe as a part of the corporate name in which the business was done. Howe Scale Co. v. Wyckoff, 198 U. S. 118, 134, 25 Sup. Ct. 609, 49 L. Ed. 972, and following; Donnell v. Herring, 208 U. S. 267, 272–278, 28 Sup. Ct. 288, 52 L. Ed. 481, and following; Herring v. Hall, supra; Davids Co. v. Davids, 233 U. S. 462, 470, 34 Sup. Ct. 648, 58 L. Ed. 1046; Hall v. Herring (C. C. A. 6) 146 Fed. 37, 40, 76 C. C. A. 495, 14 L. R. A. (N. S.) 1182, and following; Stix, Etc., Dry Goods Co. v. Amer. Piano Co. (C. C. A. 8) 211 Fed. 271, 274, 127 C. C. A. 639; Nashville Syrup Co. v. Coca-Cola Co. (C. C. A. 6) 215 Fed. 527, 132 C. C. A. 39, Ann. Cas. 1915B, 358.

. Defendant had further the right to advertise and make the most, by legitimate means, of the former connection on the part of its managing officers and their familiarity with the manufacture of pianos, and even of Knabe pianos, and to get the benefit of such legitimate prestige as was afforded thereby. This right, however, to employ the family name of these Knabes in connection with their own business was subject to this stringent limitation; the name could be employed only upon condition that reasonable precaution be taken to make it clearly appear that the goods were, defendant's own goods and of its own make, and not those of plaintiff or its predecessors. If defendant did not employ plaintiff's trade-marks or trade-names, and in connection with the use of its own corporate name took such steps as to make clear the actual origin of the goods and to prevent misunderstanding and confusion with plaintiff's goods, defendant has not infringed plaintiff's rights so far as the mere putting out of pianos is concerned; otherwise, plaintiff's rights have been invaded. Defendant, of course, had no right to use the trade-name of "Knabe," or "Wm. Knabe & Co." (indeed, defendant disclaims such right), for the use of those names would naturally and directly tend at least to create confusion as to the origin of the goods. Nor has defendant the right to advertise its pianos as Knabe's, for the unqualified use of that word naturally suggests origin of manufacture. It is also clear that the mere use, either with or without the place of manufacture, of the name Knabe Bros. Company is not enough to distinguish defendant's goods from plaintiff's, for the general public is presumably unfamiliar with the place of manufacture of the Wm. Knabe & Co. pianos or the precise form of the manufacturer's name. The name "Knabe" is the impressive feature; and while dealers are presumably in little, if any, danger of being misled by the use of defendant's name without other warning, the ultimate purchaser of only ordinary information is the one to be considered. De Voe·Snuff Co. v. Wolff (C. C. A. 6) 206 Fed. 420, 424, 124 C. C. A. 302, and cases there cited. It is also clear that defendant's use of script type (instead of the use of the old English of the trade-mark "Wm. Knabe & Co.") does not sufficiently distinguish.

[9, 10] While there was on the inside of the piano a notice that defendant had no connection with the Wm. Knabe Company or with plaintiff, we have no assurance that prospective purchasers would necessarily see or be attracted by this notice. The court was thus clearly justified in requiring that there be placed on the outside of the piano further warning notice than given by defendant's name and address on the fall-board. But we think the adoption of the metal plate as such a warning notice exceeded what was proper and necessary. The fact that defendant used on its pianos its own corporate name (containing the name "Knabe") required it to explain, but not to apologize; and we think the use of the metal plate with its finely inscribed lines, instead of the plain and universally used lettering upon the fall-board, directly and unnecessarily tended to discredit the regularity of defendant's product. We also think the statement that the piano is "not an original Knabe," or "not a Knabe," is unjustified; for thereby defendant was made to disclaim that the Knabe quality resided in its piano, and it fairly appears that the name "Knabe" has come to indicate both origin and quality. Defendant was bound to disclaim an implied origin of manufacture in plaintiff or its predecessors; it was not bound to disclaim such quality in its product.

[11-13] We think defendant entitled to use its corporate name as manufacturer upon the fall-boards of its pianos. The question is: How can plaintiff in such case be adequately protected by warning notice? It is manifestly impossible to put a sufficient notice on the fall-boards without substantially mutilating and so unduly discrediting the pianos. There is no imperative requirement that the notice immediately follow the use of the manufacturer's corporate name. The rule, as variously stated, is that defendant must accompany the use of its name "with the explanation" (Merriam v. Saalfield, 198 Fed. at page 375, 117 C. C. A. 245); it must "unmistakably inform" the public that the article of its production (Singer v. June, 163 U. S. at page 200, 16 Sup. Ct. 1002, 41 L. Ed. 118); it must so distinguish that "no one with the exercise of ordinary care can mistake" (Saxlehner v. Eisner, 179 U. S. at page 41, 21 Sup. Ct. 7, 45 L. Ed. 60); it must give "the antidote with the bane" (Herring v. Hall, 208 U. S. at page 559, 28 Sup. Ct. 350, 52 L. Ed. 616); it must be "clearly made to appear" that the goods were defendant's, and not those of plaintiff or its predecessors (Davids v. Davids, 233 U. S. at page 471, 34 Sup. Ct. 648, 58 L. Ed. 1046); the name cannot be used "without also giving information to the public" that it is not the business formerly carried on by Wm. Knabe & Co. (Hall v. Herring, 146 Fed. at pages 37, 44, 76 C. C. A. 495, 14 L. R. A. [N. S.] 1182); in other words, the means adopted must be adequate to fully prevent confusion. True, in the Waterman Pen Case, 235 U. S. 93, 94, 35 Sup. Ct. 91, 59 L. Ed. 142, the warning notice was required to be "juxtaposed" with the name of the manufacturer (and see Waterman v. Drug Co. [C. C. A. 6] 202 Fed. at page 169, 120 C. C. A. 455); but in the case of a pen a warning notice unless immediately juxtaposed would be inoperative.

A piano, however, presents different considerations; its purchase is

a substantial one, and a prospective purchaser usually looks pretty carefully before buying. We see no reason to doubt that a completely effective warning against confusion as to origin would be furnished by a proper notice permanently attached to the cheek-block, in black upon a white ground, in letters readily legible, in connection with the modification of the fall-board inscription hereafter provided and the display of the notice we shall later speak of, and which we print in the margin of this opinion. It seems inconceivable that any prospective buyer would fail to see and read a notice so prominently displayed on the cheek-block. We think, however, the notice used by defendant, before the adoption of the metal plate on the fall-board, was an insufficient warning. It did not distinctly show that the piano was not the product of the original manufacturers of Knabe pianos, and such notice we think plaintiff entitled to. The inscription upon the fall-board should be in substantially the words "Made by Knabe Bros. Co., Cincinnati." The cheek-block notice should be without ornamentation, and in plain, legible letters, as large as in defendant's first manufacture, and in substantially the following form:

"NOTICE.

"This piano is not made by Wm. Knabe & Co. of Baltimore, who were the original manufacturers of the Knabe pianos, nor by the Wm. Knabe & Co. Mfg. Co., nor by the American Piano Co., successors of Wm. Knabe & Co. The Knabe Bros. Co. (maker of this piano) is not the successor of and has no connection with either of those three companies.

"The managing officers of the Knabe Bros. Co. are Ernst J. Knabe, Jr., and William Knabe III, grandsons of the original Wm. Knabe, and formerly officers of the Wm. Knabe & Co. Mfg. Co. of Baltimore."

There may be added, if desired, the guaranty and statement of inspection, as in the original cheek-block notice. Counsel will be heard upon the precise language of the notice in connection with the settling of the form of mandate. No markings upon the piano should be required, other than the fall-board and cheek-block inscriptions referred to, in connection with those already used on the interior of the piano.

We are aware that in Chickering v. Chickering, 215 Fed. 490, —— C. C. A. ——, the Circuit Court of Appeals of the Seventh Circuit practically required defendant to use on its fall-board a new name for the piano. But the Chickering Case differs materially from the instant case; there the defendants were only remotely related to the original manufacturers of Chickering pianos, and had never until the alleged infringing action been in any way connected with the manufacture of Chickering pianos, so that the right to use their own name was rightly judged by a much stricter standard. Moreover, the use of a notice upon the cheek-block was evidently not considered, and apparently not suggested. We think there is no necessary conflict between our conclusion and that adopted in the Chickering Case.

[14, 15] Coming to the subject of defendant's representations, by advertising and otherwise: The advertising employed by defendant, or its agent, or both, went in some instances beyond what was proper; and we approve the restraint imposed by the court below in that regard, except in two particulars: (a) In paragraph 3 of the decree de-

fendant is enjoined from stating or representing, by advertisements or otherwise, that the pianos manufactured by or for defendant are the only pianos made by a Knabe or by a living Knabe, or words to that effect. We think defendant entitled to make this statement if and so long as it is the truth (as we understand it to be), provided, always, it is made clearly to appear that defendant and its officers have no connection by succession, inheritance or otherwise, with the business of the original manufacturers of the Knabe piano or the successor of those original manufacturers. (b) In paragraph 6 of the decree defendant is enjoined from making any statement, by advertisement or otherwise, that would lead the public to believe that pianos manufactured by or for defendant, or to be disposed of by or for it, are Knabe pianos. This should be so limited as not to forbid the assertion of a claim that defendant's pianos have the quality of Knabe pianos, provided, of course, there is such unmistakable disclaimer as to origin of manufacture as to preclude any confusion in that respect.

[16] In the case of Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 211 Fed. 271, 127 C. C. A. 639 (to which case the plaintiff and defendant here were parties), the Circuit Court of Appeals of the Eighth Circuit (211 Fed. 277, 127 C. C. A. 639) prescribed the form of restraint imposed on the use of the name Knabe, together with the form of a notice (before referred to and marginally printed below [2]) required to be conspicuously inserted in circulars, catalogues, and advertisements, and to be framed and kept displayed upon defendant's pianos in all salesrooms in which they are offered for sale. For the sake of uniformity, and also because the requirement and notice meet our approval, the decree herein will contain similar provision.

We agree, also, with the Circuit Court of Appeals of the Eighth Circuit that oral representations, while not required to be as explicit as those in writing, should be in harmony with the provisions referred to. It follows from what we have said that the injunction provisions of the final decree relating to plaintiff meet our approval.

The District Court is directed to so modify its decree as to conform to the views we have expressed. The defendant will recover its costs of this court.

## [2] NOTICE.

The Knabe Piano was made from 1837 to 1889, at Baltimore, by William Knabe & Co. In 1889 this firm was incorporated as William Knabe & Co. Manufacturing Company, and continued under that name until 1908, when it sold all its property, good will, and trade-name to the American Piano Company, which has since been, and now is, carrying on said business at Baltimore.

Ernst J. Knabe, Jr., and William Knabe III, learned the business from their father, Ernst Knabe, who had charge of it from 1864 to 1894. They were president and vice president of the above companies from 1898 to 1911. In the latter year they withdraw from the American Piano Company and organized the Knabe Bros. Company, and began making pianos in Cincinnati.

The piano made at Baltimore has been, and now is, known to the trade as the "Knabe" or "William Knabe & Co." piano. The piano of the Knabe Bros. Company is named "The Knabe Bros." piano. It is a new manufacture, and has no connection with the pianos made at Baltimore.