FRANK P. NOERA *vs.* H. A. WILLIAMS MANUFACTURING COMPANY & another.

H. A. WILLIAMS MANUFACTURING COMPANY *vs.* FRANK P. NOERA.

Suffolk.   December 7, 1892. — January 10, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Trademark — Equity — Injunction.*

Upon a bill in equity to enjoin N. from using the word "Draper" as applied to other oilers than those made by the plaintiff corporation, the following facts appeared.   In 1890, the plaintiff corporation purchased the stock in trade and good will of Francis Draper & Co., including the possession of their factory, of which they were tenants at will, and took a covenant from the members of the firm not to engage in the manufacture of oil cans for ten years.   A little later, the plaintiff corporation took from the same firm a grant of the exclusive right to the use of the word "Draper" for oilers for the same ten years.   Draper & Co. had made hardware since 1833, and had put the name "Draper" on different articles of their make.   About 1880, they began to make oilers, and put their name upon them in various forms to denote that the cans were of superior excellence.   For some years before 1888, and also since, there have been inferior oilers in the market resembling the genuine article, and called Draper oilers and Star oilers.   From 1880 to 1884, one A. bought some cans from Draper & Co., manufactured cans resembling theirs, and marked those in which he dealt "Draper Oiler Company."   Draper & Co. having stamped a lot of cans made for N. "Draper Oiler Co.," A. notified them not to use that label, alleging that he had a copyright on it.   To avoid controversy, they then stamped the oilers which they made for N. "F. Draper & Co.," until 1888, when, becoming dissatisfied with him, they marked the oilers made for him "Cambridge Manufacturing and Oiler Co."   In 1878, N., until then in the employ of Draper & Co., began to sell their goods on his own account.   In 1882, he sold most of the oilers made by them.   In 1885, he published a catalogue, calling it "Catalogue of Draper Oiler Co."   A later one was entitled "Catalogue of Noera [the defendant] and Draper," etc.   Up to 1887, Draper & Co. made all the oilers sold by N. under the name Draper Oiler Co.   After that, N. began to have the less important parts made elsewhere, and then the oilers were completed by Draper & Co.   In selling oilers, N. packed them in boxes labelled, "Draper Steel Oilers."   In 1890, N. sold out to the plaintiff corporation, and for the time went out of business on his own account, and entered the employ of the plaintiff.   Later in the same year, the parties released each other from the agreement made at that time.   *Held,* that the bill could be maintained.   *Held, also,* on a bill in equity brought by N. to enjoin the corporation from receiving from the post office any mail addressed to the "Draper Oil Co.," that the court would not attempt to dispose of the bill further than to deny the injunction.

HOLMES, J. These are two bills in equity, of which the second is the most important, and we therefore take that up first. It is brought by the H. A. Williams Manufacturing Company to enjoin the defendant Noera from using the name "Draper" as applied to other oilers than those made by the plaintiff. The facts reported by the justice of the Superior Court, so far as material to our decision, are as follows. On February 28, 1890, the plaintiff purchased the stock in trade and good will of Francis Draper & Co., including the possession of their factory, of which they were tenants at will, and took a covenant from the members of the firm not to engage in the manufacture of oil cans for ten years. A little later, by way of further caution, the plaintiff took from the same firm a grant of the exclusive right to the use of the word "Draper" for oilers for the same ten years. Draper & Co. had made hardware since 1833, and had put the name "Draper" on different articles of their make. About 1880, they began to make oilers, and put their name upon them in various forms, to denote that the cans were of superior excellence. We infer that Draper & Co. acquired a right to be protected to the usual extent in the use of the word "Draper," and we see no sufficient reason to doubt that, in view of the continuity of the business, the name was capable of assignment by Draper & Co. to the plaintiff. *Russia Cement Co.* v. *LePage,* 147 Mass. 206, 209. *Hoxie* v. *Chaney,* 143 Mass. 592. *Bury* v. *Bedford,* 4 DeG., J. & S. 352.

The plaintiff has a *prima facie* case, and no fact is found by the judge which meets it as matter of law. Certain facts are reported, however, from which we are asked to infer that before 1890 the word "Draper" had become public property, and "had acquired a generic meaning, descriptive of a general kind, quality, and class" of goods. *Thomson* v. *Winchester,* 19 Pick. 214, 216. Whether it has done so or not is a pure question of fact, and evidently was considered to be such in *Thomson* v. *Winchester,* where Chief Justice Shaw's proposition is, that if the term "Thomsonian Medicines" had acquired such a meaning, the plaintiff, having no patent, had no exclusive right to call his medicines Thomsonian. See *Burton* v. *Stratton,* 12 Fed. Rep. 696, 701, 702. It is to be regretted that the judge who heard the evidence should not have found the fact one way or

the other.   All that we can say is, that, so far as we can judge, the facts put in evidence do not lead to the inference that Draper & Co. had lost their rights.   See *Horton Manuf. Co.* v. *Horton Manuf. Co.* 18 Fed. Rep. 816.   The facts are, first, that for some years before 1888, and also since, there have been inferior oilers in the market resembling the genuine article, and called Draper oilers and Star oilers.   Next, from 1880 to 1884, one Alden bought some cans from Draper & Co., manufactured cans resembling theirs, and marked those in which he dealt " Draper Oiler Company."   Draper & Co. having stamped one lot of cans made for Noera " Draper Oiler Co.," Alden notified them not to use that label, alleging that he had a copyright on it.   To avoid controversy, they then stamped the oilers which they made for Noera " F. Draper & Co." till the beginning of 1888, when, becoming dissatisfied with Noera, they marked the oilers made for him " Cambridge Manufacturing and Oiler Co." Lastly, in 1878, Noera, up to that time in the employ of Draper & Co., began to sell their goods on his own account.   In 1882, he sold most of the oilers made by them.   In 1885, he published a catalogue, calling it " Catalogue of Draper Oiler Co."   A later one was entitled " Catalogue of Noera and Draper," etc.   Up to 1887, Draper & Co. made all the oilers sold by Noera under the name Draper Oiler Co.   After that, Noera began to have the less important parts made elsewhere, and then the oilers were completed by Draper & Co.   In selling oilers, he packed them in boxes labelled " Draper Steel Oilers."   In 1890, Noera sold out to the plaintiff, and for the time went out of business on his own account, and entered the employ of the plaintiff. Later in the same year, the parties released each other from the agreement made at that time.   We do not rely upon the instrument for our decision, and mention it only as fixing a date up to which, so far as appears, all the oilers sold by Noera were made or finished by Draper & Co.

If we interpret the foregoing facts correctly, they only show that, the name Draper having gained a certain commercial value as applied to oilers, there have been some attempts to steal a part of its reputation, and that those who were selling the genuine thing were glad to use a derivative name by implied license from the Drapers, who alone had a right to it.   It is

true that Draper & Co. ceased to use "Draper Oiler Co." at the demand of Alden. But that was only for the sake of peace, and perhaps because they were unduly impressed by the suggestion that Alden had a copyright. Alden's claim, so far as we can judge, was wholly without foundation. Whether it was so or not, Noera is not privy to it, and whatever else it may prove, a claim of exclusive right to the word Draper certainly does not tend to show that the word was public property.

As Noera must be enjoined from the further use of the word Draper, either upon his goods or in the name under which he does business, the first bill becomes less important. It seeks to enjoin the Williams Company from receiving from the post office any mail addressed to the "Draper Oiler Co." So far as the right to the letters follows the right to use the name, the defendant is entitled to them, but we have no means of determining the right to the letters now in the hands of the postmaster. Probably that can be settled out of court, and as it seems from the report that Noera's right to letters addressed to the Cambridge Manufacturing and Oiler Co. was admitted, we shall not attempt to dispose of the bill further than to deny the injunction.

> *On first bill injunction denied. On second bill decree for plaintiff.*

*R. W. Foster*, for Noera.

*A. Eastman*, for H. A. Williams Manufacturing Co.