THE MEDLAR & HOLMES SHOE COMPANY (LIMITED),
respondents,

*v.*

THE DELSARTE MANUFACTURING COMPANY et al., appellants.

[Argued March 7th, 1905.   Decided June 19th, 1905.]

1. The complainants' use of "Delsarte," as the name of a shoe manufactured by it, having imparted to the word a distinct element of value as a trade mark, the defendant was enjoined by the court of chancery from using the mark to designate shoes put on the market by it, notwithstanding its use of the word for another purpose antedated the complainants' adoption of it as a trade mark; such prior use by the defendant consisted in stamping "Delsarte" upon shoes after they had been purchased by the defendant for a customer.

2. A mark that is not affixed to an article until after it has been purchased for a consumer lacks the essentials of a trade mark.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery, who filed the following opinion:

The substantial dispute between the parties to this cause relates to the use of the name or word "Delsarte" as a trade mark upon shoes.

Complainants are manufacturers and sellers of shoes, with a manufacturing plant in Philadelphia, and sell their product in most of the larger Eastern cities, including Boston and New York. In the latter part of 1896 they began the use of the name "Delsarte" as a trade mark for one variety of their shoes, and in 1896 about $5,000 of the total $60,000 sales were of their "Delsarte" shoes. In 1897, of $90,000 sales, one-half or more were of "Delsarte" shoes, and in 1898 almost the entire amount of the $110,000 total sales were of the "Delsarte" shoes, and their product is about two thousand pairs per week.

The name used by complainants is a fancy name or word, not descriptive in itself of any characteristics or qualities of the

shoe, but is used to designate the special quality or line of shoes made by them as their best quality of shoes, for sale everywhere at a retail price fixed by complainants ($3.50), and in quality and in finish is superior to their other grades of shoes. The evidence of complainants shows satisfactorily that in general trade the name "Delsarte," as applied to shoes, has come to be recognized as indicating shoes manufactured by complainants, and, as against all the world, except the defendant, the right of the complainants to the exclusive use of the word as a trade mark is sufficiently established. Defendant company used the name "Delsarte" and applied it upon shoes at least seven years before the complainants adopted it, and the principal question in the cause is whether the defendant's use of the name was of such a character and under such circumstances as gave it the right to claim the exclusive use of it as a trade mark. On the part of the complainants, it is claimed that this use of the name by defendant was not of this character.

In relation to this use of the name by the defendant company as a trade mark for shoes, the evidence discloses the following substantial facts:

In August, 1888, the defendant Emma J. Swarwout registered the word "Delsarte" as a trade mark for corsets and attachments for supporting underwear, under the United States statutes, and the statement attached to the application for the trade mark declares that the class of merchandise to which the trade mark is appropriated is underclothing, and that the particular description of goods in said class is corsets and attachments for supporting underwear. The word "Delsarte" was registered, apparently, as a fancy or arbitrary word. In October, 1888, the defendant company was incorporated in New Jersey as "The Delsarte Corset Company," for the purpose, as declared in their certificate, "of manufacturing and dealing in corsets and all kinds of clothing and underwear,  *  *  *  and to do all acts and business incidental thereto." The defendant Emma J. Swarwout was one of the incorporators and officers, and she has since continued to be an officer and manager of the company.

The Delsarte Corset Company established its factory in Newark, with a branch office in New York; and has built up an

extensive business in this manufacture of corsets and under-wear.

In February, 1893, the name of the company was changed to its present name, "The Delsarte Manufacturing Company," but no change was made in the certificate as to the character of its business. Previous to the formation of the company, in 1888, the defendant Swarwout seems to have herself used the name "Delsarte" as a trade mark for corsets, but not for shoes, and since the formation of the company it has continued to use the name as a trade mark for corsets and underclothing, by the permission or consent of Emma J. Swarwout, but without, so far as appears, any formal assignment of the trade mark or written license. "Delsarte" was the name of a French artist (1811 to 1871) who became celebrated for his theory of the method of exercise for developing bodily grace and strength, and the power of dramatic expression. The general system or theory has become so well known that the word "Delsartian," as denoting the system, has since become a recognized generic or descriptive word of the English language. See *Standard Dictionary* and *Century Dictionary*. Generic or descriptive words, which denote quality of articles sold, cannot be appropriated as exclusive trade marks. This is a fundamental principle relating to trade marks. *Canal Company* v. *Clark, 13 Wall. 311, 323 (1871); Browne Tr.* § *134; Jaros Hygienic Co.* v. *Fleece Hygienic Co., 65 Fed. Rep. 424.* The name of a famous person used merely as a fancy name may become an exclusive trade mark (*Browne Tr.* § *216*), but a name of this character may also become generic and descriptive of quality, and therefore invalid as a trade mark. *Browne Tr.* §§ *178, 180, 203,* citing, *inter alia, Thomson* v. *Winchester, 19 Pick. 214 (1837).* The defendant company, from the time of its organization, manufactured and sold corsets and other underwear, using on all these goods the trade mark "Delsarte," but it never manufactured shoes, and its business in this line was confined to the sale of shoes manufactured by others. These sales were not extensive and the business consisted altogether of the selection, on special order of a customer, of shoes which have a special set or fit. The company's circulars describe the shoes as constructed on a special

theory, and so as to bring the weight of the body on the inside of the centre line—or, in the language of one of the witnesses, the essential feature of a "Delsarte" shoe selected by defendant company, was that it could be trodden upon so that the line of support through the middle of the foot did not fall outside of the second toe. The shoes thus selected are further described as broad-toed, low-heeled and with a high, arched instep, and were advertised as the "Delsarte" shoe in lectures delivered by a teacher of the Delsarte system of physical culture and dramatic art, who also recommended the other "Delsarte" clothing manufactured by the company. The shoes, when ordered by a purchaser, were selected by the company from the stock of any manufacturer or vendor who had on hand a shoe of the form desired, and were stamped "Delsarte" and delivered to the purchaser. Sometimes, but not always, the mark of the manufacturer was removed. These occasional sales of "Delsarte" shoes, as incidental to their main business in corsets and underwear, seem to have been made at the New York office or store only, and at this place began at least as early as 1889. The yearly sales, from 1890 to 1896 (omitting 1895), ran from thirteen pairs to twenty-six pairs, and were altogether to the retail purchaser, and mainly to purchasers of their other goods. After 1896 the business of the New York office was by an exclusive agency, given to a Mrs. Reu-Bond, who had previously been connected with the company, and this agent sold other styles of shoes—few sales, if any, being made after 1896 at the New York store of any "Delsarte" shoes. In February, 1897, the defendant company opened an office in Boston, where complainants had an extensive agency for their "Delsarte" shoe, to which they furnished several thousand pairs of shoes annually. The Delsarte company advertised shoes among their other goods, and from February, 1897, to January, 1899, the sales of the "Delsarte" shoes (at retail) proved, numbered twenty-seven pairs. Other sales are said to have been made by the Boston house, but the number is not shown. In August, 1898, as Swarwout says, complainants' use of the name "Delsarte" on shoes was first brought to her attention, and the defendant company, on August 29th, wrote a circular letter to a large number of

complainants' customers in the different cities, notifying them that it, the Delsarte Manufacturing Company, had a trade mark registered on the word "Delsarte" which covered shoes, and notifying them not to sell any of that name unless coming from them. It also, at the same time, notified complainants that they were infringing its trade mark and threatened action at law. The complainants, in reply, invited legal proceedings to test their right, and on their part also threatened legal proceedings if defendant failed to take them. Defendants did not commence any suit and complainants subsequently commenced an action for damages against defendant company by reason of the circular letters, which resulted, as is alleged, in countermands of orders by the complainants' customers and loss of sales, and that action is pending in the supreme court of this state. After establishing their store in Boston, and in the spring of 1898 and previous to the notice to complainants and their customers, defendant company gave orders to a manufacturer of shoes at Lynn for the manufacture of shoes for them, and the first shipment to them of these shoes came about November, 1898. These shoes, sold since the dispute between the parties arose, are stamped "Delsarte Mfg. Co.," 19 Temple Place, Boston, and are shoes of the same general character as those manufactured by complainants. The general appearance of the shoes sold by the complainants and the defendant company is so similar that the ordinary purchaser at retail would not be likely to distinguish between them except by the trade marks, and experts, or persons skilled in the trade, have equally failed on the witness stand to distinguish them in some instances.

The present claim of defendant company is to the exclusive use of the word "Delsarte," not in connection with its own name, but as a separate word by way of trade mark, and the claim is not limited to the right to use the word, as it was originally used, to indicate to the purchaser, or, generally, the selection of a shoe claimed by it to be constructed in accordance with the "Delsartian" theory, but is a general claim to the use of the word "Delsarte" as belonging to it exclusively, for any shoe sold by it, and the answer and cross-bill are based on a claim of this general character. This general claim, if valid,

must arise wholly from the previous limited use of the word as indicating their very limited selection of a particular kind of shoe for special orders and purposes. If the name as originally used by defendant had been intended as a mere fancy name, not descriptive of the qualities of the shoe, the prior use of the name, however limited it may have been, would, I think, be sufficient to entitle defendant to continue its use. Use of a word under such circumstances as to show an intention to adopt it as a trade mark is the test of exclusive title to a trade mark, rather than the extent or duration of the use. *Browne Tr.* §§ *52, 306; Kohler Manufacturing Co.* v. *Beeshore, 59 Fed. Rep. 572 (Circuit Court of Appeals, 1893)*.

In this case the use of the word by defendant company, though limited and occasional and for special purposes, has been continuous from 1888 up to the time of filing the bill, and as to extent and duration this would be sufficient to establish its right if the word, as used by the defendant, can be considered as the use of a fancy word or name in which it could acquire a trade mark. This raises the vital questions in the case, viz., (1) whether defendant's prior use of the name was with the intention of using "Delsarte" as a fancy name or with the intention of using it to indicate a particular quality or character of the shoes, to which quality it gave its guaranty of selection by the use of this name; and (2) whether a special use of the word, in a generic or descriptive sense only, prevents defendant from asserting an exclusive use of the word as a fancy word or trade mark by complainants, who have used it solely for that purpose, and whose use of it was begun (so far as appears) in good faith and without any knowledge that the word had been previously used by defendant company as a trade mark upon shoes.

Upon the first question, which is one of fact purely, I reach the conclusion, upon the entire evidence, that defendant's prior use of the name was for the special purpose of indicating the quality or character of the shoe, and its selection of shoes as having a special quality, and that the word "Delsarte," as used by it for this purpose of indicating quality and its selection, was used as meaning the same as "Delsartian," a generic and

descriptive word. On the decision of the second question, I have greater difficulty in reaching a conclusion. It is a novel question and the authorities to which counsel on both sides have referred me (and they have been very diligent) do not aid directly in this solution. My judgment is that this special intentional use of the word "Delsarte," not as a mere fancy word, but as a word applied and intended by them as descriptive and generic, had the effect of preventing defendant from acquiring the exclusive right to the word as a trade mark. Defendants had no exclusive right to manufacture shoes constructed on the Delsarte theory, as applied to shoes, and it was open to any person to adopt and apply the Delsarte method, if there was one, to the manufacture of shoes, and call them "Delsarte" shoes. "Delsarte," in such use, would be merely the generic term or term indicating the quality or character of the article. In *Thomson* v. *Winchester, 19 Pick. 214,* Chief-Justice Shaw held that "Thomsonian medicines," having acquired a generic meaning descriptive of a general kind or class of medicines, could not be appropriated exclusively by the plaintiff, Thomson, although he had discovered the system and originally introduced the name "Thomsonian" as applied to them. Such exclusive right to sell can only be obtained by patents. In the present case, "Delsartian" had become a generic or descriptive term before defendant company applied to shoes the term "Delsarte" as descriptive, meaning "Delsartian." Defendant's special use of the name on shoes as descriptive only, up to the time when it was informed that complainants had built up an extensive trade in shoes called "Delsarte" shoes, purely as a fancy name, was not such a use of the word as a trade mark as to entitle defendant now to claim the exclusive right to use the word as a fancy word trade mark, and not descriptive. To allow such change of use, and base defendant's right to a trade mark on it, excluding complainants from the continuance of its use of the word, might and probably would result in giving defendant company the benefit of the trade in "Delsarte" shoes, which the complainants have built up in good faith and at large expense. The letters to complainants' customers falsely claiming a registered trade mark as covering

shoes, and defendant company's orders for the general manu-
facture of shoes, justify the conclusion that this is the present
intention.    The defendant company having apparently aban-
doned its prior use of the word "Delsarte" as descriptive only,
and claiming now, by its course of business and its answer and
cross-bill, the exclusive right to use the word as a fancy word
and applicable to all shoes sold by it, I conclude that it has no
such right, and that the complainants have, as against the de-
fendants, the exclusive right to the word "Delsarte" as a trade
mark.    This right to the trade mark "Delsarte" for shoes does
not, however, give complainants the right to prevent the defend-
ant company from using the word "Delsarte" as part of its
present corporate name, "The Delsarte Manufacturing Com-
pany," or from stamping any articles sold by it with its cor-
porate name, as indicating the origin of the goods.    The general
rule in relation to this matter is that every person or corporation
has the right to the use of his or its own name as a trade mark,
subject to the qualification that the use of the name is not
accompanied by circumstances indicating an intention to mis-
lead the public.    *Browne Tr.* §§ *137, 427.*

Complainants, in the selection of the name of another person
as the trade mark for their goods, took the risk of the previous
proper use of the word as part of the corporate name of an
existing corporation, and they took, also, the risk of the proper
use of this corporate name as a trade mark.    They are therefore
not entitled to restrain the defendant company from the use
of its name as a trade mark upon shoes.    Defendant is now
using its name and its place of business in Boston, "19 Temple
Place," as its trade mark stamped on shoes, and this continu-
ation of the entire name and place of business as a trade mark
so distinguishes defendant's goods from the complainants' that
I think nobody could mistake the one for the other.    Com-
plainants, therefore, are entitled to an injunction restraining
defendant from any use of the word "Delsarte" as a trade mark
for shoes except in connection with and as a part of its cor-
porate name, and in such manner as to indicate that the cor-
porate name, and not merely the word "Delsarte," is its trade

mark. Complainants are entitled to costs on defendant's cross-bill.

The original bill in this case was filed by "Medlar & Holmes Shoe Company, Limited," as an association under the laws of the State of Pennsylvania, authorized by its laws to sue and be sued by this name. The associations under these laws are not corporations with full corporate power, and pending the suit an application was made to allow the individual complainants composing the association to be also made parties. This application was allowed, after hearing counsel, and an order allowing the amendment was made, and the cause subsequently proceeded to hearing. Defendant's counsel have at final hearing renewed the objection to the suit proceeding, but this matter was disposed of by the order and the objections now raised were passed upon at that time. I do not, therefore, consider them again.

*Mr. Jerome D. Gedney,* for the appellants.

*Mr. Edward M. Colie,* for the respondents.

The opinion of the court was delivered by

GARRISON, J.

The decree of the court of chancery is affirmed, for the reasons given in the opinion of the learned vice-chancellor who heard the cause. The distinction that he draws between the use by the complainants of the word "Delsarte" as a fancy name and the use made of it by the defendant as a descriptive term is a valid one and fully warranted by the testimony, but added stress should, we think, be given to the consideration that the complainants' use of the word directly tended to impart to it that essential element of value in a trade mark by which prospective purchasers are attracted, and upon which customers learn to rely; whereas, in the defendant's use of it, the purchase was made on behalf of the customer before the word was stamped upon or in any way affixed to the article purchased, the

customer relying not upon any significance the mark had to him, but solely upon the selective skill of the defendant in filling his order. A mark that is not affixed to an article of barter until after it had been purchased for a customer lacks the essential elements that entitle a trade mark to equitable protection.

Whether the appellant may, in the future, make the same use of the word "Delsarte" that it did prior to the respondents' use of it as a trade mark, viz., by stamping it on shoes furnished to its customers, is a question that has not been argued before us, and hence upon this point no opinion is expressed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, PITNEY, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—10.

*For reversal*—DIXON—1.