## LAMBERT PHARMACAL CO. v. KALISH PHARMACY.

(Circuit Court, S. D. New York.   May 10, 1911.)'

1. TRADE-MARKS AND TRADE-NAMES ⬳59—NAMES SUBJECT TO APPROPRIA-
TION—DESCRIPTIVE WORDS.

A registered trade-mark "Listerine," as applied to an antiseptic prep-
aration, was entitled to protection against infringement, though prior to
its adoption a surgeon, named Lister, inaugurated a method of surgical
dressing without, however, employing any distinct antiseptic substance,
the efficacy of which method was much debated, resulting in the words
"lister," "listerian," and "listerism," becoming familiar, and though the
owner of such trade-mark did not acquire from such surgeon the right
to use the name "listerine," it appearing that knowledge of such surgeon's
achievement was practically confined to the medical profession and those
closely allied thereto, and that the use of his name would not convey to
the public generally any significance.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. §§ 68–72; Dec. Dig. ⬳59.]

2. TRADE-MARKS AND TRADE-NAMES ⬳8—NAMES SUBJECT TO APPROPRIATION
—FANCIFUL NAMES.

A fanciful name for an article of merchandise may constitute a valid
trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 12; Dec. Dig. ⬳8.]

3. TRADE-MARKS AND TRADE-NAMES ⬳7—NAMES SUBJECT TO APPROPRIATION
—NAMES OF PEOPLE.

The name of a person who has achieved fame and distinction may be
adopted as a trade-mark, provided it is not descriptive of the quality or
character of the article or a geographical name, and it is not necessary
that the adopted trade-mark should be the name of the merchant who
puts the commodity on the market.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 11; Dec. Dig. ⬳7.]

4. TRADE-MARKS AND TRADE-NAMES ⬳59—INFRINGEMENTS—IMITATION OF
NAMES.

Where complainant for 17 years had been manufacturing and selling
an antiseptic preparation used for cleansing the teeth, throat and mouth,
under the registered trade-mark "Listerine," defendant infringed such
trade-mark by selling a similar substance under the trade-name "Lister-
septine," as the similarity in the names was liable to mislead unwary
customers, and from the similarity an intention to deceive would be pre-
sumed.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. §§ 68–72; Dec. Dig. ⬳59.]

In Equity.   Suit by the Lambert Pharmacal Company against the
Kalish Pharmacy.   On final hearing.   Decree for complainant.

Cummings & Burleigh and Redding, Greeley & Austin, of New York
City (George P. Burleigh and William A. Redding, of New York City,
of counsel), for complainant.

Charles A. Kalish and Baird, Cox & Scherr, all of New York City,
for defendant.

HAZEL, District Judge.   [1] The bill alleges unfair competition
in trade and infringement of complainant's registered trade-mark "Lis-

terine" by defendant's use of the word "Listerseptine," in the sale of its commodity. The complainant's predecessor, Jordan W. Lambert, in the year 1881, began the manufacture of an antiseptic compound, and, to differentiate it from other compounds having similar properties, he adopted the arbitrary name of "Listerine" and printed such name on labels pasted on bottles containing his vendable article. Prior to such designation the name "Lister," or its derivative, "Listerine," had never been applied to an antiseptic preparation. It is shown that Sir Joseph Lister, an eminent English surgeon, had as early as the year 1865 inaugurated a method of surgical dressing which may be said to consist of immersing the instruments in a solution of carbolic acid and using a like solution for spraying or dressing the wounds. The efficacy of this method of dressing wounds was much debated at the time, but finally it received the approval of the medical profession, and, meanwhile, the words "Lister," "Listerian," and "Listerism" became familiar in England and the United States; but the so-called "Listerian" treatment of wounds preparatory to performing an operation was not universally recognized and adopted by the medical profession until the year 1880.

Lord Lister did not originate the product or formula to which Mr. Lambert applied the trade mark or name "Listerine." Complainant's product has no relation whatever to the antiseptic treatment of wounds made known to the medical profession by Lord Lister, whose method of applying antiseptics to achieve the desired surgical result was new and novel, but without the employment, however, of any distinctive antiseptic substance. The word "Listerine" upon its origination was registered in the United States Patent Office by complainant's predecessor, as a trade-mark for a secret medical formula, since which time it has been prominently advertised and printed upon labels of bottles containing the preparation. Although the record does not show that Lord Lister conferred on the complainant or its predecessor the right to use the name "Listerine" in connection with the manufacture and sale of its antiseptic formula, I am nevertheless of the opinion that complainant is entitled to protection in the use of its secret formula and in the adaptation of the name "Listerine'" by which its article became known to the public. No one has the right to use the said trade-mark or to imitate it so as to enable palming off an antiseptic preparation, the product of another, in the pretense that it was the antiseptic preparation of the complainant.

[2, 3] The trade-name "Listerine" has become familiarly known to the public as belonging to the complainant and as denoting a preparation of prophylactic or antiseptic characteristics, of peculiar color and taste, generally used for cleansing the teeth and as a throat or mouth wash. The fame achieved by Lord Lister in his antiseptic treatment in surgical operations is not sufficient to warrant this court in holding that the word "Listerine" is merely descriptive or of qualifying import. The authorities uniformly hold that the selection of a fanciful name for an article of merchandise may constitute a valid trade-mark. There is no objection to adopting as a trade-mark the name of a person who has achieved fame and distinction for the purpose of attracting the at-

tention of the public to an article provided such name is not descriptive of the quality or the character of the article, or a geographical name. Hesseltine Trade-Marks and Unfair Trade, p. 15; 28 Am. & Eng. Ency. of Law (2d Ed.) 361. The name "Lister" can scarcely be said to convey to the public generally any significance of the achievements of its owner; such knowledge is practically confined to the medical profession and those closely allied thereto. It is not necessary that the adopted trade-mark should be the name of the merchant who puts the commodity on the market. Hopkins on Trade-Marks, p. 139, § 63.

[4] The defendant has applied to its antiseptic, which is also commonly used for cleansing the teeth, throat, and mouth, the trade-name "Listerseptine," and sells its article contained in bottles having thereon a label, the said trade-name printed upon it. The trade-name was chosen by the defendant in October, 1907, about 17 years after complainant's origination of the the trade-mark "Listerine." The similarity of the names in appearance and sound, when considered with the similarity of the articles to which the trade-names are applied, is clearly apparent, and the probabilities of the defendant's designation misleading the unwary customer in my opinion is so clear that it amounts to an infringement of the complainant's trade-mark. In view of the close resemblance of the respective trade marks or names and their application to similar antiseptic preparations, a fraudulent intent to deceive need not be affirmatively shown by the complaint, but such intent will be presumed therefrom.

The charge of unfair competition was not pressed by complainant at the hearing. Complainant may have a decree for infringement of its trade-mark by defendant, but without costs.