STEPHANO BROS., Inc., v. STAMATOPOULOS et al.

(Circuit Court of Appeals, Second Circuit.   November 14, 1916.)

No. 9.

1. TRADE-MARKS AND TRADE-NAMES ⬅79—SOURCE OF EXCLUSIVE RIGHT—
REMEDIES FOR INFRINGEMENT.
   The right to an exclusive trade-mark is not one created by act of Congress, but the owner of a trade-mark has a property right in it at common law, the violation of which will be enjoined by a court of equity, and the civil remedies which might be invoked before Congress legislated still remain in full force.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 89, 90; Dec. Dig. ⬅79.]

2. TRADE-MARKS AND TRADE-NAMES ⬅7, 59(5)—NAMES SUBJECT OF APPRO-
PRIATION—INFRINGEMENT.
   The name "Rameses" may constitute a valid trade-mark for a brand of cigarettes, and when so used is infringed by the name "Radames," used for a similar purpose, which is so similar in both sound and appearance as to be likely to deceive ordinary purchasers.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 11, 71; Dec. Dig. ⬅7, 59(5).]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Stephano Bros., Incorporated, against Stamatis D. Stamatopoulos and Peter D. Stamatopoulos, Stamatis D. Stamatopoulos, and George Papageorges, copartners trading under the firm name of Stamatopoulos & Co. Decree for complainant, and defendants appeal. Affirmed.

See, also, 199 Fed. 451.

Hatch & Clute, of New York City (Edward S. Hatch, Vincent P. Donihee, and Walter F. Welch, all of New York City, of counsel), for appellants.

Wise & Lichtenstein, of New York City (Henry M. Wise, of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.   The complainants are citizens of the United States residing in the state of Pennsylvania. They are copartners in the business of manufacturing and selling cigarettes. They claim the ownership of the trade-mark "Rameses" as applied to the cigarettes they manufacture. The defendants, also copartners, are manufacturers of cigarettes. Their place of business is in New York City, and their sales are made, not only in New York, but in other parts of the United States. They have adopted as their trade-mark the name "Radames," and the complainants seek to enjoin its use in connection with the sale of cigarettes. They claim that this use of the word is unlawful and misleading and constitutes an infringement upon their trade-mark rights. Undoubtedly every manufacturer has a

right to distinguish his goods from similar goods manufactured by another, and to this end may adopt a trade-mark. It is an invasion of rights for one manufacturer to deceive the public by placing upon his goods an imitating trade-mark calculated to lead would-be purchasers into the belief that the goods are those of another.

Congress first attempted to regulate the right of trade-marks in Act July 8, 1870, c. 230, 16 Stat. 198, which provided for their registration. By the common law the exclusive right to a trade-mark grew out of its use. By the act of Congress the exclusive right was to attach upon registration. The power of Congress to pass the act was considered by the Supreme Court in 1879 in the Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550. The court in that case decided that the act of 1870 was unconstitutional, inasmuch as it was not restricted to trade-marks in commerce with foreign nations, or among the several states, or with the Indian tribes.

Congress thereafter passed Act March 3, 1881, providing for the registration of trade-marks used in commerce with foreign nations or with the Indian tribes. The complainant, however, acquired no right under the terms of that act, which in express terms provided that the application to be filed must, in order to create any right whatever in favor of the party filing it, be accompanied by a written declaration that such trade-mark "is used in commerce with foreign nations or Indian tribes." Act March 3, 1881, c. 138, 21 Stat. p. 503. If the complainant's application contained such a declaration, there is no proof that he uses it in trade with foreign nations or Indian tribes.

Act Feb. 20, 1905, c. 592, 33 Stat. 724, authorized the registration of trade-marks used in commerce among the several states, as well as in commerce with foreign nations and the Indian tribes. That act in section 5 (Comp. St. 1913, § 9490) provided:

"That no mark which consists merely in the name of an individual, firm, corporation, or association, not written, printed, impressed, or woven in some particular or distinctive manner or in association with a portrait of the individual, or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the terms of this act."

As the trade-mark in this case is the name of an individual it was not entitled to registration under the act unless printed in some particular or distinctive manner as it was not in association with a portrait of the individual. Whether this trade-mark was printed in "a particular or distinctive manner" within the meaning of the act was discussed somewhat upon the argument, the defendants claiming that the name "Rameses" was not "written, printed, impressed, or woven" in any particular or distinctive manner as the act required, and so was not entitled to be registered, as it was simply printed in type having nothing about it that can be called particular or distinctive, unless the fact that it is somewhat more black-faced than the type usually employed in ordinary printing can be regarded as a sufficient compliance with the requirement that it be printed in a particular or distinctive manner. We shall not pass upon that question at this time, as the complainant's rights in this case are not dependent upon the legislation of

Congress. Even though the complainants in what they did failed to comply with the requirements of the act of 1905, a question upon which we do not pass, they would still be entitled to the relief they seek.

[1] The right to an exclusive trade-mark is not one created by act of Congress. It is a right which the common-law courts recognized at an early day. Southern v. How, Popham, 143 (1582). And in course of time the courts of equity extended their protection over the right by issuing injunctions to restrain infringements. The owner of a trade-mark has a property right in it at common law, the violation of which will be enjoined by a court of equity, and the civil remedies which might be invoked before Congress legislated remain in full force still. See Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550. Inasmuch as a diversity of citizenship exists, the right of the complainants to sue the defendants in the Southern district of New York for the protection of their common-law right in their trade-mark is not to be questioned.

That the complainants have a common-law right to the trade-mark "Rameses" is evident. The record shows they began manufacturing cigarettes in 1895. At that time they stamped the word "Ramees" on the boxes and printed it on the cigarette paper. In 1897 they changed the spelling to "Rameses," and have ever since continuously used the word to designate the cigarettes which they manufacture. They claim, and the evidence does not contradict them, that they were the first persons to use the word, or any word similar thereto, as a trade-mark for cigarettes. The defendants in this court do not dispute this fact, although in the court below they sought to introduce evidence to show that the word "Rameses" on cigarettes had been used in Germany. Objection was made to the admission of the testimony, and the trial court excluded it. No attempt was made upon the argument in this court to show that that testimony was not properly excluded.

[2] This brings us to inquire whether the name "Rameses" can be employed as a trade-mark. There are numerous instances in which the courts have said that the name of a person is the subject of exclusive appropriation as a trade-mark. Among them are the following: Cooke & Cobb Co. v. Miller, 169 N. Y. 475, 62 N. E. 582 (1902); H. A. Williams Mfg. Co. v. Noera, 158 Mass. 110, 32 N. E. 1037 (1893); Shaw v. Pilling, 175 Pa. 78, 34 Atl. 446; Medlar, etc., Shoe Co. v. Delsarte Mfg. Co. (1900) 68 N. J. Eq. 706, 46 Atl. 1089, affirmed in 68 N. J. Eq. 706, 61 Atl. 410; Spieker v. Lash, 102 Cal. 38, 36 Pac. 362; Wm. Rogers Mfg. Co. v. Simpson, 54 Conn. 527, 565, 9 Atl. 395 (1887). But these cases simply establish the proposition that the law permits a manufacturer to use his own name as a trade-mark. The rule is that while, as against persons bearing a different name, a manufacturer's right in his name trade-mark is absolute and exclusive, as against persons bearing the same name no such exclusive right can be set up. If the public have confidence in a man's skill and integrity, his name may be on that account the most advantageous trade-mark he can adopt. But such a trade-mark has the disadvantage that it is exposed to the possibility that some other person bearing the same name may be the manufacturer of similar articles, and have the consequent right to affix his name upon such articles, thereby creating a possibility of mis-

take on the part of consumers as to the manufacture of the goods they are about to buy.

In the case at bar the complainant manufacturers have not taken their own name and affixed it to the cigarettes as a trade-mark, and that fact raises a somewhat different question.

In Barnett v. Leuchars, 13 Law Times (N. S.) 495 (1865), an injunction was issued to protect the complainant's trade-mark in fireworks called "Pharaoh's Serpents"; the court remarking that the owner had "an exclusive right to a trade-mark or label, and that right is to be regarded as his property."

In Barrows v. Knight, 6 R. I. 434, 78 Am. Dec. 452 (1860) the right to use the name Roger Williams as a trade-mark on cotton cloth was sustained. The court said:

"'Roger Williams,' though the name of a famous person long since dead, is, as applied to cotton cloth, a fancy name, as would be, so applied, the names, of Washington, Greene, Perry, or of any other heroes, living or dead."

In Merserole v. Tynberg, 36 How. Prac. (N. Y.) 14 (1868), the right to use the name "Bismarck" as a trade-mark for a particular style of collar was involved and the court declared that the complainants had the right to appropriate the name for a new purpose, and, having done so, "were entitled to avail themselves of all the advantages of their superior diligence and industry." The defendant had insisted (4 Abb. Prac. [N. S.] 412) that, as "Bismarck" was the name of a distinguished German citizen, Bismarck being then alive, no such exclusive right to the name could be successfully claimed by the complainants, for the reason that the law did not permit the use by one man of the name of another to the exclusion of the right to all others to use it.

In Goldstein v. Whelan (C. C.) 62 Fed. 124 (1894), the name "Napoleon" was used as a trade-mark. There was no intimation that the name could not be used for that purpose, but the preliminary injunction was refused because the affidavits disclosed that the name had been previously used by another, long prior to the use made of it by the complainant, and for precisely the same purpose, to indicate a brand of cigars.

In Medlar & Holmes Shoe Co. v. Delsarte Manufacturing Co., 68 N. J. Eq. 706, 61 Atl. 410 (1905), the New Jersey Court of Errors and Appeals affirmed a decree of the Court of Chancery reported in 46 Atl. 1089, sustaining the right to adopt as a trade-mark for shoes the name of "Delsarte." The name was that of a French artist who became celebrated for his theory of the method of exercise of developing bodily grace and strength and the power of dramatic expression. The Chancellor, in holding the complainants entitled to an injunction, said:

"I conclude that * * * the complainants have, as against the defendants, the exclusive right to the word 'Delsarte' as a trade-mark."

In Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60 (1900), the right to use the name "Hunyadi" as a trademark seems to have been taken for granted. The court held that the plaintiff had lost her right to the individual appropriation of the name because of 20 years of inaction, in which the use of the word had been permitted to numerous other importers. The use of the name by

proprietors of similar articles for many years had made it public property, and it was too late to resuscitate her original right.

In Castner v. Coffman, 178 U. S. 168, 20 Sup. Ct. 842, 44 L. Ed. 1021 (1900), the Supreme Court held that the name "Pocahontas" could not be used as a trade-mark in the sale of coal. This was not because "Pocahontas" was a distinguished historical personage, but because prior to its use there was a well-known Pocahontas coal region, and that fact made it impossible for the complainants to obtain an exclusive right to use the name as against other parties mining and selling coal from the same region.

In the Court of Paris in Dalbanne & Petit v. Coleuille & Co., 7 Annales, 414, both parties used the name "Lamartine" for a certain elixir. The court on appeal said:

"There is no doubt that proper names, other than those of the manufacturer, can be employed like any other sign, as a distinct mark of industrial products, and thus become veritable property, not as a title or mode of appellation, but as a commercial mark."

In Brown on Trade-Mark (Ed. 1885) § 216, the author declares there are many instances of fancy names of men becoming valid trade-marks.

In Hesseltine on Trade-Marks and Unfair Trade (Ed. 1906) p. 15, it is said that:

"The proper name of a distinguished historical personage may be a valid trade-mark."

In 28 American & English Encyclopedia of Law, p. 361, it is said:

"A trade-mark may consist of a fictitious or celebrated name, as that of a famous person or thing, or some character or thing of history, fiction, or fancy. Such names, thus used, are in truth arbitrary or fancy names. Where, however, the name of a historical or celebrated person is also a geographical name, such name is not a good trade-mark, because, as is seen in another section, geographical names cannot be monopolized by any one as trade-marks, though they will receive a measure of protection as trade-names, under the doctrine of unfair competition.

In 38 Cyc. p. 721, it is said that:

"Names of characters in fiction or mythology, or of celebrated imaginary or historical persons, or things, constitute valid trade-marks, when used as such, because they are arbitrary or fanciful and nondescriptive, unless, as may be the case they have become generic and descriptive of quality, owing to the manner of use and the general understanding."

The law permits the adoption as a trade-mark of the name of a person who has achieved fame and distinction, provided the name is not descriptive of the quality or the character of the article or a geographical name. In this case the name adopted is a famous Egyptian historical character, who lived at least 1,000 years before the Christian era. The name is one not generally in use in the United States, and we can see no objection to its adoption as a trade-mark. If the word ever had a geographical significance, it has none now in the United States. In Old Testament geography there may have been a city of lower Egypt called "Rameses"; but no such place is found on the map of Egypt in the Century Atlas, and no reason exists for de-

nying to these complainants their right to the protection of the trade-mark.

Is the use of the name "Radames" by the defendant an infringement? Similarity, not identity, is the test of infringement of a trade-mark. Saxlehner v. Eisner & Mendelson Co., supra. If the words sound alike, there is an infringement. 38 Cyc. 744. In the matter of trade-mark infringement, each case must depend on its own peculiar cir-cumstances and other authorities are of little help. Still it is some serv-ice to note the holding of the courts in analogous cases. In Lambert Pharmical Co. v. Kalish (C. C.) 219 Fed. 323, "Listerine" was held infringed by "Listerseptine." In Fairbanks v. Ogden Company (D. C.) 220 Fed. 1002, "Cottolene" by "Chefolene." In United Lace Co. v. Barthels Mfg. Co. (D. C.) 221 Fed. 456, "Beaded" by "Imbeaded." In American Lead Pencil. Co. v. Gottlieb (C. C.) 181 Fed. 178, "Knox-all" by "Beats-all." In Florence Mfg. Co. v. Dowd (C. C.) 171 Fed. 122 and 178 Fed. 73, 101 C. C. A. 565, "Keepclean" by "Sta-Kleen." In Enoch Morgan v. Whittier Coburn Co. (C. C.) 118 Fed. 657, "Sa-polio" by "Sapho." In Little v. Kellam (C. C.) 100 Fed. 353, "Sorosis" by "Sortoris." In Celluloid Co. v. Cellonite Co. (C. C.) 32 Fed. 94, "Celluloid" by "Cellonite." In Actien, etc., v. Somborn, 14 Blatch. 380, Fed. Cas. No. 496, "Appolinaris" by "Appolinus." In Hostetter v. Vowinkle, 1 Dill. 329, Fed. Cas. No. 6,714, "Hostetter" by "Hos-tetler."

The word "Rameses" is commonly pronounced by the purchasing public with the accent on the first syllable. And the ordinary pro-nunciation of the word "Radames" by the purchasing public in like manner is with the accent on the first syllable. It is possible that a small portion of the public may give to "Radames" the Italian pronun-ciation of the opera and put the accent on the last syllable. However that may be, clearly we must be governed by the natural and ordinary pronunciation given to the two words by the purchasing public. Gov-erned by that test, the similarity in sound is such as might very easily result in confusion. There is similarity in appearance as well as in sound. "Rameses" and "Radames" certainly resemble each other in appearance as closely as, if not more closely than, do some of the names which were held to infringe in the above cited cases. To amount to an infringement it is not necessary that the resemblance should be sufficient to deceive experts, or persons specially familiar with the trade-mark or goods involved. The cases show that it is immaterial that a critical inspection and comparison discloses differences, or that persons seeing the two trade-marks side by side would not be de-ceived. It is enough that upon the whole there is a deceptive similarity sufficient to deceive ordinary purchasers giving such attention as such purchasers usually give to purchasing one article thinking it is the oth-er. In our opinion such a deceptive similarity exists between "Rame-ses" and "Radames."

Decree affirmed.