GARRETT & CO., Inc., v. A. SCHMIDT, JR., & BROS. WINE CO.

(District Court, N. D. Ohio, W. D.   January 4, 1919.)

No. 197.

1. TRADE-MARKS AND TRADE-NAMES ☞57, 70(1)—INFRINGEMENT—TEST.

Whether there is infringement of trade-mark or unfair competition is to be determined by taking the trade-mark, labels, and dress as a whole, and determining whether the resemblances so far dominate the differences in appearance, sound, and dress as to be likely to deceive the average, ordinary, and unwary customer.

2. TRADE-MARKS AND TRADE-NAMES ☞59(5)—INFRINGEMENT—SIMILARITY OF NAME AND DRESS.

The name "Virginia Dare," as a trade-mark for a wine, held infringed by the name "Virginette," used for wine of similar color and taste, in connection with bottles, caps, and labels all purposely made similar in appearance.

3. TRADE-MARKS AND TRADE-NAMES ☞93(1)—INFRINGEMENT—UNFAIR COMPETITION.

The burden rests on a later comer in an established field to show that it exercised a proper degree of care to so differentiate its product as to avoid deception of purchasers by retail dealers.

4. TRADE-MARKS AND TRADE-NAMES ☞86—SUIT FOR INFRINGEMENT—LACHES.

Complainant in a suit for infringement of trade-mark and unfair competition held not barred by limitation or laches of the right to relief by injunction and accounting.

In Equity. Suit by Garrett & Co., Incorporated, against the A. Schmidt, Jr., & Bros. Wine Company. Decree for complainant.

Smith, Beckwith & Ohlinger, of Toledo, Ohio, and Shattuck, Glenn, Huse & Ganter, of New York City (Garrard Glenn, of New York City, George H. Beckwith, of Toledo, Ohio, and William B. Walsh, of New York City, of counsel), for plaintiff.

George C. Beis, of Sandusky, Ohio, and Thomas E. Lannen, of Chicago, Ill., for defendant.

WESTENHAVER, District Judge.   Complainant files its bill to restrain infringement of a registered trade-mark, consisting of the words "Virginia Dare," as applied to a light-colored sweet wine.   Its bill also contains allegations tending to show a common-law trademark in the same words, and charges generally unfair competition. Allegations of diversity of citizenship and amount in dispute are also made, which give this court jurisdiction independently of the registration of the trade-mark.   Defendant's answer denies infringement and unfair competition, and makes a defense of laches and the statute of limitations.   Upon these issues the case has been fully heard and submitted for a decision.

The testimony satisfactorily shows that complainant's predecessors in title began the manufacture as early at least as 1901 of a light-colored sweet wine, the base of which is the juice of the Scuppernong grapes, grown chiefly in North Carolina.   This wine has ever since been continuously advertised and sold to the trade under the trade-

mark "Virginia Dare," and in bottles with labels of the appearance and dress such as is now being used.

On this hearing no question is made touching the validity of the trade-mark, nor of complainant's title thereto, nor of its succession by valid transfer to all the rights of its predecessor's good will and business. The validity of the words "Virginia Dare" as a trade-mark could not well be questioned, in view of Hamilton Brown Shoe Co. v. Wolf Bros., 240 U. S. 251, 26 Sup. Ct. 269, 60 L. Ed. 629, commonly known as the "American Girl" Trade-Mark Case. Moreover, in Garrett & Co. v. Sweet Valley Wine Co. (D. C.) 251 Fed. 371, decided May 11, 1918, Hon. John M. Killits, of this district, upheld its validity.

Complainant and its predecessors have uniformly marketed this wine, never in bulk, but always in bottles of various sizes, but of similar shape, and have sold only to jobbers, and never direct to the consumer or retail trade. These bottles are of white glass, evenly tapered from the middle to the mouth end. They contain at the base a rectangular label on white paper with the trade-mark "Virginia Dare" printed in gilt letters diagonally curved from the lower left to the upper right corner. In the upper left corner is a picture of a lady's head, supposed to represent the legendary personage known as Virginia Dare, and in the lower right corner is a crest or shield, surmounted with an eagle, supposed to be the crest or shield of complainant or its predecessors. Another label appears approximately midway of the tapered part of the bottle, bow-shaped in form, with ends depending diagonally from the center, and with this crest or shield appearing at the middle or apex thereof. The bottle is closed with a metal cap. On the side opposite the labels are blown in the glass the words, "Garrett & Company" and "Virginia Dare," the crest or shield above described, similar to that on the labels, and a warning against refilling the bottle. In 1912 this trade-mark, with an accompanying drawing, showing the lady's head and the shield or crest in the approximate position and form of the printed label, was duly registered. In 1917 the trade-mark "Virginia Dare," without any accompanying drawing or part of the label, was again registered.

The testimony also shows that complainant has advertised extensively its product under the trade-mark "Virginia Dare" in magazines, newspapers, and trade papers, and has, by practically every method known to the advertising trade, brought it to the attention of the retail trade or a consuming public. In addition, it has employed traveling salesmen whose duties were to call upon the retail and saloon trade to stimulate a demand for the Virginia Dare wine, to be supplied through some jobber or wholesaler. It has distributed various forms of advertising matter, consisting in part of placards, calendars, fans, booklets, and other display advertising, all to be used in advertising and bringing to the attention of the consuming public its Virginia Dare wine. As a part of this advertising, it has distributed to the retail trade triangular metal racks to be used in building up in the form of a pyramid a display of bottles of Virginia Dare. On the margin of these racks is conspicuously displayed the following:

"This display of racks is loaned, and remains the property of Garrett & Company. Other goods must not be displayed on it."

The testimony shows that for many years complainant's advertising expense has been not less than $100,000 a year. As a result, in 1913 and prior thereto, a large and profitable trade in Virginia Dare, and a wide popularity with certain parts of the retail trade and consuming public, had been obtained.

The testimony also shows that defendant is a producer of wines, with its place of business at Sandusky, Ohio. Prior to 1913 most of the wine produced by it was sold in bulk, and very little, if any, in bottles. During 1913 defendant's manager, a Mr. Royer, after experimentation, produced a light-colored sweet wine of the same general color and quality as Virginia Dare. The experimentation was indulged in with a view to getting this result The base of this wine is the juice of the Delaware and Catawba grapes, with some juice of the California grapes added to increase the alcoholic content, also adding some sweetening material. Defendant began immediately to market this wine in bottles of precisely the same shape and color as those used by complainant for marketing its product. It also sells it in bulk. Defendant's prices are and have been uniformly lower than complainant's prices. Defendant does not advertise its product, and has never done so, except only to a negligible extent, when this wine was first placed on the market.

Defendant, at the time it began to introduce this wine to the trade, adopted therefor, as a trade-mark, the word "Virginette." This trade-mark was registered by defendant February 24, 1914. Defendant also registered a label bearing this trade-mark and other matter February 25, 1914. This label is in size, shape, color, and position on the bottle precisely the same as complainant's. The word "Virginette" is printed thereon in substantially the same type and color, although in somewhat larger sized letters, extending from the lower left to the upper right corner in the same general form and curve, as complainant's Virginia Dare label. In the upper left corner, in place of the lady's head, is a bunch of grapes of substantially the same size; in the lower right corner, in the place of the crest or shield of complainant, is an eagle of substantially the same size as the crest. There is also a bow label, of the same size and form as complainant's, placed on the neck of the bottle in the same position, containing, however, a bunch of grapes, instead of the crest or shield. The cap closing the bottle is also of the same form and appearance. These bottles do not have blown therein on the reverse side any words or descriptive matter.

The evidence further tends to show that complainant's wine has become known to the retail trade or consuming public as Virginia wine, that it has acquired a wide popularity with people of Polish nationality or descent, and that these purchasers, either of a bottle or of a glass of wine over the counter, receive and accept Virginette wine, when offered in response to requests for Virginia or Virginia Dare wine, without detecting this substitution.

The evidence also further shows that retail dealers make use of

complainant's advertising matter, particularly the triangular racks, above described, to display and sell Virginette wine in bottles containing the Virginette trade-mark and dress; also that some retailers have advertised Virginette wine as being like Virginia Dare, and have refilled complainant's bottles with Virginette purchased in bulk, and sold it as Virginia Dare to the retail trade. Defendant disclaims all knowledge of these practices, and denies that it has ever authorized, directed, or suggested them.

[1] Upon this general state of facts, complainant contends that its trade-mark is infringed and that its charge of unfair competition is sustained. The law applicable in this situation is well settled, and does not require an extended citation or review of the authorities. The difficulty is, as usual, in the application of well-settled rules of law to the facts of the case. In this circuit we have a number of well-considered cases, a reference to which will be sufficient for present purposes, namely, Ohio Baking Co. v. National Biscuit Co., 127 Fed. 116, 62 C. C. A. 116, known as the "In-er-Seal" Case; De Voe Snuff Co. v. Wolff, 206 Fed. 420, 124 C. C. A. 302, known as the "Eagle Snuff" Case; and O. & W. Thum Co. v. Dickinson, 245 Fed. 609, 158 C. C. A. 37, known as the "Sticky Fly Paper" Case.

From these opinions it appears that the test of whether or not there is infringement or unfair competition is to be determined by taking the trade-mark, labels, and dress as a whole, and determining therefrom whether the resemblances so far dominate the differences in appearance, sound, and dress as to be likely to deceive, not the cautious, experienced, or discriminating purchaser, but the average, ordinary, and unwary customer; in this case, that purchaser is the retail or consuming purchaser buying a bottle or glass of wine at retail and exercising in so doing only that degree of care or attention which a purchaser in that situation is accustomed to exercise. In other words, the test of infringement of a trade-mark is similarity, not identity.

[2] Applying these tests, is the charge of infringement and of unfair competition established? This inquiry is not to be answered by an examination of the words "Virginia Dare" and "Virginette" alone. The law of trade-marks is only a specialized branch of the general law of unfair competition, and in determining whether or not a charge of infringement is sustained, it is usual to take into consideration all of the other similarities contributing, with the general similarity of the words in the trade-mark, to mislead the public.

In a number of trade-mark cases in which the sustaining or differentiating collateral considerations were no greater than in the present case, the charge of infringement has been held to have been sustained, and, while each case must stand on its own particular circumstances, a reference to the holding of the courts in analogous cases will be helpful. In Celluloid Co. v. Cellonite Co. (C. C.) 32 Fed. 94, "Celluloid" was held infringed by "Cellonite"; in Little v. Kellam (C. C.) 100 Fed. 353, "Sorosis" by "Sortoris"; in Enoch Morgan v. Whittier-Coburn Co. (C. C.) 118 Fed. 657, "Sapolio" by "Sapho"; in Ohio Baking Co. v. National Biscuit Co., 127 Fed. 116, 62 C. C. A. 116 (C. C. A. 6), "In-er Seal" by "Factory Seal," because

of similarity of display matter; in Florence Mfg. Co. v. Dowd (C. C.) 171 Fed. 122, and 178 Fed. 73, 101 C. C. A. 565, "Keepclean" by "Sta-Kleen"; in American Lead Pencil Co. v. Gottlieb (C. C.) 181 Fed. 178, "Knox-all" by "Beats-all"; in De Voe Snuff Co. v. Wolff, 206 Fed. 420, 124 C. C. A. 302 (C. C. A. 6), "Eagle Snuff" by "White Eagle Snuff," notwithstanding the picture of the eagle and name on the conflicting trade-marks were materially different; in Lambert Pharmacal Co. v. Kalish (C. C.) 219 Fed. 323, "Listerine" by "Lister-septine"; in Fairbanks v. Ogden Co. (D. C.) 220 Fed. 1002, "Cottolene" by "Chefolene"; in United Lace Co. v. Barthels Mfg. Co. (D. C.) 221 Fed. 456, "Beaded" by "Imbeaded"; in Stephano Bros. v. Stamatopoulos, 238 Fed. 89, 151 C. C. A. 165 (C. C. A. 2), "Rameses" by "Radames"; in Actien, etc., v. Somborn, 14 Blatchf. 380, Fed. Cas. No. 496, "Appolinaris" by "Appolinus"; in Hostetter v. Vowinkle, 1 Dill. 329, Fed. Cas. No. 6,714, "Hostetter" by "Hostetler." The foregoing summary is in part appropriated from the opinion in (C. C. A.) 238 Fed. 89, 94. See, also, O. & W. Thum Co. v. Dickinson, 245 Fed. 609, 158 C. C. A. 37 (C. C. A. 6), in which a charge of infringement and unfair competition was sustained, notwithstanding numerous marked differences.

I am clearly of opinion that the charge of infringement and of unfair competition are both established. It is difficult to resist the impression that the defendant's object and purpose was to obtain some part of complainant's good will due to the consuming public's wide acquaintance with Virginia Dare. Defendant's manager began his experimentations, obviously for the purpose of producing a wine similar in character and appearance to complainant's, and likely to appeal to the same class of consumers. This defendant had a lawful right to do. It adopted, however, the trade-mark of "Virginette," the same style, shape, and color of bottle, the same general form and dressing of label, for the purpose, it seems to me, of appropriating to itself some part of that business and good will thus built up through many years of effort and advertising. This defendant has no lawful right to do. It had, of course, a lawful right to compete in good faith for this trade and sell its wine. It had also the right to use that type, shape, and form of bottle; but, being a later comer into the same field of trade, it did not have the right to adopt a trade-mark or trade-name, or to assemble similarities of size, shape, and form of the bottle, label, dress, and cap in such a way as would naturally tend to produce confusion in the minds of the retail or consuming trade as to the origin of its product—certainly not to produce such confusion as to its origin as to result in its sale to purchasers under a belief that it was the product of complainant.

[3] The burden is on the later comer in an established field to exercise a proper degree of care and caution in these respects, so as to avoid such deception or confusion. If defendant had performed its full duty in these respects, it would not be responsible for wrongful acts of retailers in substituting one wine for the other; but this the defendant has not done. It has adopted a trade-mark of such similarity that, taken with other similarities in bottle, label, and dress, the natural and probable result is that purchasers are confused or

deceived. It must therefore be held responsible for all the consequences of its neglect or default; that is, in the present case, held responsible for the substitution practiced by retailers of Virginette or Virginia Dare, and the appropriation in consequence thereof of some part of complainant's good will and established trade.

The wrongful consequences of defendant's conduct is intensified by its business policy of refraining from advertising, and of selling this wine in bulk and at lower prices, thereby enabling it to appropriate in larger measure the results of complainant's efforts and advertising, and tempting retail distributors to indulge in substitution and unfair competition.

[4] Defendant's defense of laches and statute of limitations may be briefly disposed of. Complainant's president, learning in 1913, or early in 1914, that defendant was marketing a similar wine in the manner already described, sought an interview with defendant's manager and called his attention to the alleged infringement, and to the alleged unfair competition resulting from similarity in dress and appearance. Defendant insisted upon its right to continue the methods of which complaint was thus made. Immediately thereafter a bill like the present one was filed in this district, to which defendant appeared and answered, setting up, in addition to its present defenses, that complainant had violated the Pure Food and Drugs Act in various respects. This case was placed on the calendar for hearing in 1915, but for some reason had not yet been heard in the early part of February, 1918. Complainant therein, being a Virginia corporation, had, in the meantime, sold and transferred its business and good will to the complainant in this suit, a New York corporation, and later the present complainant moved for a substitution on the record and for leave to file a supplemental bill setting up this change of title. Defendant responded with a motion to dismiss under equity rule No. 57 (198 Fed. xxxiv, 115 C. C. A. xxxiv) and early in February, 1918, an order was made, dismissing that case without prejudice. The present complainant within two weeks thereafter filed this bill.

If the question were one arising under the Ohio statute of limitations, and the action one that would be barred, if not brought earlier than the date of the filing of this bill, complainant's right would still be protected by section 11233, General Code, and not barred by any statute of Ohio. See Bates v. Railroad, 12 Ohio St. 620; Penfield v. Mason, 17 Ohio Cir. Ct. R. (old) 165. The applicable rule is that of the equitable doctrine of laches in trade-mark or unfair competition cases. Upon the facts stated, it is clear that complainant is not barred of its right to relief by injunction. See McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Menendez v. Holt, 126 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; Saxlehner v. Eisner, 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60.

Nor is complainant barred by laches from its right to an accounting. Defendant in the early stages of its conduct was promptly notified and warned. A suit was brought in due time, and, while it did not proceed to a final hearing, was none the less a pending action, giving ample notice of complainant's rights and of its intention to insist upon them. The dismissal later for want of prosecution does

not diminish the force of these considerations; hence it appears that all defendant's acts were indulged in after full warning, and with full knowledge of complainant's rights and of its intentions. Nothing appears herein to indicate that the defendant has at any time altered its situation, modified its course of conduct, indulged in expenditures, or did anything in reliance upon a belief induced by any act of complainant or its predecessor that complainant or its predecessor was acquiescing in defendant's conduct, course of business, or waiving any of its legal or equitable rights to redress. Defendant began and persisted in its methods of doing business upon its own responsibility, without being misled by any act of complainant or its predecessor, and must now be held to full responsibility for the consequences.

A decree awarding an injunction and for an accounting will be entered in conformity herewith.