GARRETT & CO., Inc., v. SWEET VALLEY WINE CO.

(District Court, N. D. Ohio, W. D.    May 11, 1918.)

No. 79.

1. TRADE-MARKS AND TRADE-NAMES ⬡➡70(3)—UNFAIR COMPETITION—WHAT CONSTITUTES.

Where complainant advertised and built up extensive trade in a sweet wine known as "Virginia Dare," *held*, that the defendant's sale of a similar wine under the name "Virginia Belle" was unfair and that, in the absence of other considerations, defendant should be enjoined from selling its wine under the name "Virginia."

2. TRADE-MARKS AND TRADE-NAMES ⬡➡70(3)—UNFAIR COMPETITION.

Though the use of the name "Virginia" as part of a trade-mark for alcoholic beverages, such as whiskies, is established, that fact does not warrant defendant's unfair use of the word to dispose of its sweet wine as complainant's product, known as "Virginia Dare."

3. JUDGMENT ⬡➡91—CONSENT DECREE—CONSTRUCTION.

A consent decree should be construed as if it were a contract.

4. EVIDENCE ⬡➡386(1)—PAROL EVIDENCE—JUDICIAL PROCEEDINGS.

Where a consent decree was unambiguous, evidence of negotiations leading up to it is inadmissible.

5. TRADE-MARKS AND TRADE-NAMES ⬡➡97—UNFAIR COMPETITION—CONSENT DECREE.

A consent decree in a suit for unfair competition *held* to preclude defendant from selling, in competition with complainant's wine, known as "Virginia Dare," its own wine, under the name of "Virginia," where the use of the word "Virginia" was bound to be unfair.

In Equity. Suit by Garrett & Co., Incorporated, against the Sweet Valley Wine Company. On supplemental petition. Decree for complainant.

Alexander L. Smith, of Toledo, Ohio, and Gerrard Glenn, of New York City (Smith, Beckwith & Ohlinger, of Toledo, Ohio, and Shattuck, Glenn, Huse & Ganter, of New York City, on the brief), for plaintiff.

Williams & Steineman, of Sandusky, Ohio, and Owen, Owen & Crampton and Chas. W. Owen, all of Toledo, Ohio, for defendant.

KILLITS, District Judge. This matter is before the court on a supplemental petition in the cause commenced on the 15th of August, 1913, and its consideration depends largely upon the construction of a consent decree entered on the original complaint in January, 1914. The action is one for unfair competition, and the issue as presented by the supplemental petition is peculiarly affected by the experiences which have resulted from the rivalry in business between the parties since the original petition was filed and by the history of the case here.

[1] The predecessors of complainant, about 18 years ago, put on the market and advertised extensively a light-colored sweet wine, whose base was the juice of Scuppernong grapes, using the arbitrary trade-name of "Virginia Dare," taking for that purpose the name of the legendary first child born, on Roanoke Sound, of the first English colony in America. Ten or twelve years ago the defendant, manufacturing wine within this district, put on the market, under the name of "Virginia Belle," in competition with complainant's wine, a beverage of

similar color and character. The reason given for the choice of this name for defendant's wine is so fanciful that, considered in connection with other facts hereafter to be discussed, it has little persuasive power. Although the grapes whose juice forms the foundation of defendant's wine are grown in North Carolina, the court is attempted to be persuaded that the geographical name "Virginia" was chosen because the location in North Carolina wherein the grapes are grown was part of the general territory vaguely designated "Virginia" by Sir Walter Raleigh, and was included in this very general geographical definition until later courtiers included it within the territory named after the first Charles, nearly 300 years ago. Having heard the testimony on this subject twice, and also considering it in connection with other matters, we are forced to and do conclude that the name was chosen arbitrarily and in purposeful competition with complainant's business in the "Virginia Dare" wine. The choice of a trade-name with the word "Virginia" as a most prominent characteristic is undoubtedly arbitrary in each instance before the court.

"Virginia Belle" wine is marketed at a less price than that exacted for complainant's product, and the only explanation which the testimony affords why the defendant can undersell the complainant so materially as to make profitable a substitution to consumers is the fact that the complainant advertises "Virginia Dare" very extensively, whereas the expenditures in that behalf by the defendant are extremely meager. The evidence brought before the court in two hearings leaves no room for doubt that the names are not only confusing to the inattentive consumer, but that the situation affords an opportunity, which is actually enjoyed by the defendant, to market "Virginia Belle" wine on the strength of complainant's advertising, the difference in price operating as a strong inducement to substitution, the facts showing that in a large section of the consuming public desiring a wine of this general character, but designating what they wanted by the more characteristic title of "Virginia," are found easy subjects for deception.

The evidence shows a displacement of complainant's customers in favor of defendant's product, with the only explanation that the latter may be easily substituted for the former, at a greater profit to the dealer, and there is little opportunity for any other conclusion than that complainant's extreme advertising accounts for the increase of defendant's business, which increase is extraordinary, considering the comparatively insignificant publicity for its wine which defendant buys through advertising methods. At the start, defendant marketed substantially the same wine under the two names "Virginia Belle" and "Puritan Belle," at the choice of the trade. At first by far the greater proportion was taken under the name "Puritan Belle," but year by year the other designation increased in popularity, until at the present time its rival is far in the rear. It seems to the court that this circumstance is very significant. There is no reason why, as a matter of taste or attractiveness, other than the name, one brand should prevail over the other. In short, upon the facts now before the court, were there no other considerations, there would be little

hesitation in permitting complainant to take a decree definitely restraining defendant from using the word "Virginia," in connection with "Virginia Belle" or otherwise, upon its wine of this character, on the authority of De Voe Snuff Co. v. Wolff, 206 Fed. 420, 124 C. C. A. 302. which case, although an action for infringement of trademark directly, seems to us to be completely authoritative here.

[2] It is contended upon the part of the defendant that the use of the name "Virginia" as part of a trade-name for alcoholic beverages is established in common usage, but the illustrations furnish valid grounds to discriminate the situation before the court. Two of the illustrations of wines, namely, "Norton's Virginia Seedling" and "Ives' Virginia Seedling," are purely descriptive, and are not arbitrary trade-names at all. They designate a beverage as one made from grapes bearing such names respectively. These wines, also, are in an entirely different class; one not sold to consumers whose palates crave the sweet wine in controversy here, nor marketed in bottles of the same character. Excepting two other wines put up by the defendant using the word "Virginia" in combination, subsequent to the employment by complainant of their trade-name, but one other instance of such marketing of sweet wine is given, and that is shown to have a local market only, and the use has not been acquiesced in by complainant, and as to which it is guilty of no laches. We are also cited to the use of this term in connection with a large variety of whisky trade-names; but, in the judgment of the court, the distinction between whiskies and wines is so great that these illustrations are of no persuasiveness. A man desiring a sweet light-colored wine, such as the Scuppernong grape makes, would not be deceived if he were furnished a sour wine or whisky, even if the label should emphasize the word "Virginia."

The issue raised by the original petition was over the form and appearance of the label bearing the name "Virginia Belle," and the consent by defendant to a decree enjoining the use of its then label operated as an admission that, respecting such label, the competition with complainant's business was unfair. Thereafter a motion in contempt, based upon the use of a revised label, still employing the trade-name "Virginia Belle," was prosecuted, and the question before this court, decided in 1916, was whether that label was a merely colorable departure from the label used and abandoned as a result of the consent decree. This court found for complainant, and held the defendant in contempt, and fined it $500, to be paid to complainant in reimbursement for its expenses; the court calling special attention to the fact that the color scheme was so analogous to that of complainant's label as to be confusing. Thereupon the defendant commenced to use the same label design as in the second instance, changing the color scheme only, which use provoked the present supplemental petition. On hearing, it was shown that this color scheme has again been changed, and, finally, the design has been rearranged, although some semblance to the original particulars of design was retained. However, this change has not been sufficient to avoid confusion of products. Many unwary customers, who find in the word "Virginia" alone the chief significance

in complainant's label, are shown to be open to easy deception. The court has difficulty, also, to avoid the conclusion, from all the evidence, that the defendant has not desired to avoid unfair competition with the complainant, but has undertaken only to so conduct its business along the border line of legitimacy, but still riding on the crest of popularity induced by complainant's advertising, that the latter would have the least possible excuse for complaint to a court of equity and the greatest difficulty to find a remedy for injuries sustained.

[3-5] It appears now that the defendant has made three experiments with the use of the word "Virginia," each of which has worked to complainant's disadvantage, and the evidence satisfies the court that it is improbable that use of the word "Virginia" in any combination may be found which will at the same time work a distinctive designation of defendant's wine and not unfairly interfere with complainant's business. The court is at the point where it finds itself compelled to say that defendant must abandon the use of the word "Virginia" in any kind of combination for the marketing of this particular kind of wine, unless, as defendant says as a last resort, the consent decree is too narrow to afford thereunder to the complainant this broad relief. Defendant is right in saying that this consent decree must be construed as if it were a contract. The correspondence between the parties leading up to it was brought and received tentatively against the objection of the complainant, upon defendant's insistence that it showed an agreement of the parties not to interpret the decree as affording opportunity for excluding from the defendant the use of this word. We have examined this correspondence with some care, and find, aside from objections to its competency as evidence, that, accepted, it affords no such criterion of interpretation. In fact, the consent decree was arrived at on the express stipulation by complainant that it should be interpreted without reference to previous negotiations. This decree, however, is unambiguous; wherefore resort to previous negotiations is, on familiar principles, impossible. It is as follows:

"This day came the parties, the complainant and respondent, by their counsel, and by consent of both parties hereto it is adjudged, ordered, and decreed that the defendant, its officers, agents, and employés, be and they are hereby perpetually enjoined and restrained from, directly or indirectly, manufacturing, selling, or exposing for sale, or causing or being in any way concerned in the manufacture, selling, or exposing for sale, of wine in bottles bearing labels in colorable imitation of the 'Virginia Dare' labels now used by complainant on its wines, and from furnishing labels in colorable imitation of the 'Virginia Dare' labels now used by complainant, to be used by others in the sale of wines. And they are further perpetually enjoined and restrained from using on bottles the name 'Virginia Belle,' or other names or insignia upon their labels, marks, or brands in connection with the sale, or exposing for sale, of wines in such manner as would mislead, or be likely to mislead, prospective purchasers into the belief that wine bearing such marks, labels, brands, or other insignia is the 'Virginia Dare' wine of complainant. It appearing to the court that nothing further remaining to be done in this case, it is ordered that the same be removed from the docket of this court; the costs of the same to be taxed against the respondent."

By it, as we read it, defendant is bound to mark the wine it puts out in competition with the "Virginia Dare" wine in a way to avoid un-

fair injury to complainant's trade. We think the terms of this agree-ment are broad enough to compel defendant to abandon the use of the word "Virginia" in combination, as a trade-name, if it is shown that such use produces unfair rivalry with complainant's business. It ap-pears to the court that the second paragraph of this order, under an interpretation most favorable to the defendant, permits the use of the word "Virginia" only under circumstances which, as the facts devel-oped before this court in the two hearings which we have had on evi-dence, show are impossible to be had, and that the word cannot be used as a significant word of the trade-name of defendant's product without producing a colorable and unavoidable imitation of complain-ant's trade-name, wherefore the defendant should be perpetually en-joined from the use hereafter of the word "Virginia" in any form as a distinctive part of the trade-name of its wine of this character.

The label exactly complained of by the complainant in the supple-mental petition is not shown to have been used very extensively by the defendant. For this and other reasons appearing on the record, upon which the court deems it now unnecessary to enlarge, the motion for an accounting will be denied.

The court has considered the authorities relied upon by the defend-ant. Oral comments from the bench distinguish, in our judgment, the case of Joseph Schlitz Brewing Co. v. Houston Ice & Brewing Co., 241 Fed. 817, 154 C. C. A. 519. In that case the labels are not only dissimilar in shape, at least, but the distinctive words were utterly un-like, being in each instance but the maker's names. It was not a case where the same controlling arbitrary word was used, as here, nor do we find the Circuit Court decision respecting the use of the terms "Un-ion Leader" and "Union World" as designating brands of cut plug tobacco (193 Fed. 1015) to have been on facts so similar to the situation before us as to give it much significance.

The decree will carry costs.